## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| DYNATA, LLC, *et al.*,[1] | Case No. 24-11057 (TMH) |
| Debtors. | (Joint Administration Requested) |

## JOINT PREPACKAGED PLAN OF REORGANIZATION
## OF DYNATA, LLC AND ITS DEBTOR AFFILIATES

Dated: May 21, 2024

**WILLKIE FARR & GALLAGHER LLP**
Jeffrey D. Pawlitz (*pro hac vice* pending)
Andrew S. Mordkoff (*pro hac vice* pending)
Erin C. Ryan (*pro hac vice* pending)
Amanda X. Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
jpawlitz@willkie.com
amordkoff@willkie.com
eryan@willkie.com
afang@willkie.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Rodney Square
1000 North King Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
emorton@ycst.com
mlunn@ycst.com

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Dynata, LLC (8807), New Insight Holdings, Inc. (1844), New Insight Intermediate Holdings, Inc. (6495), Dynata Holdings Corp. (0668), Research Now Group, LLC (7588), SSI/Opiniology Interco LLC (1855), iPinion, Inc. (9463), Research Now, Inc. (5523), SSI Holdings, LLC (6379), New Insight International, Inc. (0453), Imperium LLC (8375), inBrain, LLC (8031), Apps That Pay, LLC (9028), inBrain Holdings, LLC (9696), Branded Research, Inc. (9577), Screenlift.io, LLC, Research Now DE I, LLC (5528), Research Now DE II, LLC (5613), and Instantly, Inc. (6756).  The Debtors' headquarters is located at 4 Research Drive, Suite 300, Shelton, CT 06484.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING
      LAW AND DEFINED TERMS ...........................................................2

    A.    Rules of Interpretation, Computation of Time and Governing Law............2

    B.    Definitions.............................................................................................2

    C.    Consultation, Notice, Information, and Consent Rights ...........................18

ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS .....................................19

    A.    Administrative Claims ................................................................................19

    B.    Priority Tax Claims.....................................................................................20

    C.    DIP Facility Claims.....................................................................................20

    D.    U.S. Trustee Fees .......................................................................................21

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
      EXISTING EQUITY INTERESTS ...................................................21

    A.    Introduction................................................................................................21

    B.    Summary of Classification and Treatment of Classified Claims and
        Existing Equity Interests ............................................................................21

    C.    Classification and Treatment of Claims and Existing Equity Interests .....22

    D.    Special Provisions Regarding Unimpaired Claims.....................................28

    E.    Subordinated Claims ..................................................................................29

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ...............................29

    A.    Presumed Acceptance of the Plan...............................................................29

    B.    Deemed Rejection of the Plan.....................................................................29

    C.    Voting Classes ...........................................................................................29

    D.    Acceptance by Impaired Classes of Claims................................................29

    E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.........29

    F.    Plan Cannot Be Confirmed as to Some or All Debtors .............................30

    G.    Elimination of Vacant Classes ...................................................................30

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN............................30

    A.    Corporate and Organizational Existence. ..................................................30

    B.    Corporate Action........................................................................................31

    C.    Organizational Documents of the Reorganized Debtors ...........................31

i

| | | |
|---|---|---|
| D. | Managers, Directors and Officers of Reorganized Debtors; Corporate Governance | 32 |
| E. | New Operating Agreement | 32 |
| F. | First Out Term Loan Credit Documents | 32 |
| G. | Second Out Take Back Term Loan Documents | 34 |
| H. | New ABL Facility | 35 |
| I. | Exemption from Registration Requirements. | 36 |
| J. | Cancellation of Certain Existing Security Interests | 37 |
| K. | Management Incentive Plan | 37 |
| L. | Restructuring Transactions | 37 |
| M. | Effectuating Documents; Further Transactions | 38 |
| N. | Vesting of Assets in the Reorganized Debtors | 38 |
| O. | Release of Liens, Claims and Existing Equity Interests | 39 |
| P. | Cancellation of Stock, Certificates, Instruments and Agreements | 39 |
| Q. | Preservation and Maintenance of Debtors' Causes of Action | 40 |
| R. | Exemption from Certain Transfer Taxes | 41 |
| S. | Certain Tax Matters | 41 |
| T. | Restructuring Expenses | 42 |
| U. | Distributions | 42 |

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........43

| | | |
|---|---|---|
| A. | Debtors Assumption of Executory Contracts and Unexpired Leases | 43 |
| B. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 43 |
| C. | Assumption of Insurance Policies | 44 |
| D. | Indemnification | 45 |
| E. | Severance Agreements and Compensation and Benefit Programs; Employment Agreements | 45 |
| F. | Workers' Compensation Benefits | 46 |
| G. | Reservation of Rights | 46 |

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........46

| | | |
|---|---|---|
| A. | Distribution Record Date | 46 |
| B. | Dates of Distributions | 46 |
| C. | Distribution Agent | 47 |

D.      Cash Distributions.................................................................................47

E.      Rounding of Payments.........................................................................47

F.      Allocation Between Principal and Interest .............................................47

G.      General Distribution Procedures...........................................................48

H.      Address for Delivery of Distributions....................................................48

I.      Unclaimed Distributions .......................................................................48

J.      Withholding Taxes................................................................................49

K.      No Postpetition Interest on Claims ......................................................49

L.      Setoffs ...................................................................................................49

M.      Surrender of Cancelled Instruments or Securities ...................................50

ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............................50

A.      Disputed Claims Process.......................................................................50

B.      Claims Administration Responsibilities ...................................................50

C.      Estimation of Claims............................................................................51

D.      Amendments to Claims; Adjustment to Claims on Claims Register.........51

E.      No Distributions Pending Allowance .....................................................51

F.      Distributions After Allowance ..............................................................52

G.      No Interest............................................................................................52

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.............................52

A.      Conditions to Effective Date.................................................................52

B.      Waiver of Conditions............................................................................53

C.      Substantial Consummation ...................................................................54

D.      Effect of Non-Occurrence of Conditions to Consummation ....................54

ARTICLE X. RETENTION OF JURISDICTION .........................................................54

A.      Retention of Jurisdiction ......................................................................54

B.      Failure of Bankruptcy Court to Exercise Jurisdiction..............................56

ARTICLE XI. EFFECTS OF CONFIRMATION ..........................................................56

A.      Binding Effect.......................................................................................56

B.      Discharge of the Debtors ......................................................................56

C.      Exculpation and Limitation of Liability .................................................57

D.      Releases by the Debtors .......................................................................57

E.      Consensual Releases by Holders of Claims and Existing Equity
        Interests ................................................................................................58

F.      Injunction ..................................................................................................60

G.      Protection Against Discriminatory Treatment ..........................................61

ARTICLE XII. MISCELLANEOUS PROVISIONS ....................................................61

A.      Modification of Plan ..................................................................................61

B.      Revocation of Plan .....................................................................................61

C.      Severability of Plan Provisions..................................................................62

D.      Successors and Assigns...............................................................................62

E.      Term of Injunctions or Stays......................................................................62

F.      Reservation of Rights..................................................................................62

G.      Notices ........................................................................................................63

H.      Governing Law ...........................................................................................64

I.      Exhibits .......................................................................................................64

J.      No Strict Construction ................................................................................64

K.      Conflicts......................................................................................................64

L.      Immediate Binding Effect...........................................................................64

M.      Entire Agreement .......................................................................................64

JOINT PREPACKAGED PLAN OF REORGANIZATION OF DYNATA, LLC AND ITS
DEBTOR AFFILIATES

**INTRODUCTION**

Dynata, LLC, a Delaware limited liability company, and each of the other above-captioned Debtors[2] hereby propose the Plan for, among other things, the resolution of the outstanding Claims against, and Existing Equity Interests in, the Debtors. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (distributed contemporaneously herewith) for a discussion of the Debtors' history, business, properties, projections and the events leading up to solicitation of the Plan and for a summary of the Plan and the treatment provided for herein. The Debtors urge all Holders of Claims entitled to vote on the Plan to review the Disclosure Statement and the Plan in full before voting to accept or reject the Plan. There may be other agreements and documents that will be filed with the Bankruptcy Court that are referenced in the Plan and the Plan Supplement as Exhibits. All such Exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Subject to certain restrictions set forth in the Restructuring Support Agreement and the Plan, and the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to amend, supplement, amend and restate, modify, revoke or withdraw the Plan prior to the Effective Date.

These Chapter 11 Cases are consolidated for procedural purposes only and the Debtors are jointly administered pursuant to an order of the Bankruptcy Court for administrative purposes and voting. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan of reorganization for each Debtor, including for purposes of distribution. Each Debtor reserves the right to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class.

---

[2]    Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I.B of the Plan.

# ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof and unless otherwise specified herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit shall mean that document or exhibit, as it may thereafter be amended, amended and restated, modified or supplemented from time to time in accordance with the terms thereof; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections hereof; (v) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) any reference to an Entity as a Holder of a Claim or Existing Equity Interest includes such Entity's successors and assigns; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) "$" or "dollars" means dollars in lawful currency of the U.S.; and (xi) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### B.    Definitions

1.1.    "**Administrative Claim**" refers to any right to payment constituting a cost or expense of administration incurred during these Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises), (ii) all Allowed Professional Fee Claims; (iii) Restructuring Expenses.

1.2.    "**Affiliate**" has the meaning as set forth in section 101(2) of the Bankruptcy Code.

1.3. "**Allowed**" means, with respect to any Claim or Existing Equity Interest, such Claim or Existing Equity Interest or any portion thereof that a Debtor, with the reasonable consent of the Required Consenting First Lien Lenders, or a Reorganized Debtor has assented to the validity of, or that has been (i) allowed by a Final Order of the Bankruptcy Court, (ii) allowed pursuant to the terms of the Plan, (iii) allowed by agreement between the Holder of such Claim, on one hand, and the applicable Debtor, with the reasonable consent of the Required Consenting First Lien Lenders, or Reorganized Debtor, as applicable, on the other hand or (iv) allowed by a Final Order of a court in which such Claim could have been determined, resolved or adjudicated if these Chapter 11 Cases had not been commenced; *provided*, that notwithstanding the foregoing, the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.4. "**Avoidance Actions**" means any and all avoidance, recovery or subordination claims and causes of action, whether actual or potential, to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 594, 550, 551, and 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

1.5. "**Backstop Premium**" means the backstop premium provided to each of the Exit Backstop Party equal to 9% of First Out New Money Term Loans and paid in cash on the Effective Date.

1.6. "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended.

1.7. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

1.8. "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms and the Local Rules, in each case as amended from time to time and as applicable to these Chapter 11 Cases or proceedings therein.

1.9. "**Branded Warrants**" means those certain warrants to acquire 1.5% of the New Common Stock be issued pursuant to the Third Amended and Restated Promissory Note No. 1, dated as of May 21, 2024.

1.10. "**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

1.11. "**Cash**" means legal tender of the U.S. or the equivalent thereof.

1.12. "**Cash Collateral**" has the meaning set forth in section 363(a) of the Bankruptcy Code.

1.13. "**Cause of Action**" means any action, proceeding, agreement, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character

3

whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. "Cause of Action" also includes: (i) any right of setoff, cross-claim, counterclaim, or recoupment, and any claim on a contract or for a breach of duty imposed by law or in equity; (ii) with respect to the Debtors, the right to object to Claims or Existing Equity Interests; (iii) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (iv) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any Avoidance Action.

1.14.   "**Chapter 11 Cases**" means the cases commenced by the Debtors under chapter 11 of the Bankruptcy Code on the Petition Date in the Bankruptcy Court.

1.15.   "**Claim**" means a "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

1.16.   "**Claims Register**" means the official register of Claims against the Debtors maintained by the Solicitation Agent.

1.17.   "**Class**" means a category of Claims or Existing Equity Interests classified under Article III of the Plan pursuant to section 1122 of the Bankruptcy Code.

1.18.   "**Confirmation**" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of these Chapter 11 Cases, within the meanings of Bankruptcy Rules 5003 and 9021.

1.19.   "**Confirmation Date**" means the date upon which Confirmation occurs.

1.20.   "**Confirmation Hearing**" means the combined hearing to consider approval of the Disclosure Statement and confirmation of the Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.21.   "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan and approving the Disclosure Statement.

1.22.   "**Consenting First Lien Lenders**" means the Holders of First Lien Claims that are party to the Restructuring Support Agreement and pursuant to the terms thereunder.

1.23.   "**Consenting Lenders**" means the Consenting First Lien Lenders and Consenting Second Lien Lenders.

1.24.   "**Consenting Second Lien Lenders**" means the Holders of Second Lien Term Loan Claims that are party to the Restructuring Support Agreement and that have not breached their obligations thereunder.

1.25.   "**Consenting Stakeholders**" means the Consenting Lenders and the Sponsors.

1.26.   "**Consummation**" means the occurrence of the Effective Date.

1.27.   "**Cure**" means the payment of Cash, or the distribution of other property or other action (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an Executory Contract or Unexpired Lease of the Debtors that the Debtors seek to assume under section 365(a) of the Bankruptcy Code.

1.28.   "**Cure Claim**" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

1.29.   "**Debtors**" means each of the above-captioned debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

1.30.   "**Definitive Documents**" has the meaning set forth in the Restructuring Support Agreement.

1.31.   "**DIP Agent**" means the administrative agent and collateral agent under the DIP Facility, together with its successors and assigns in such capacities.

1.32.   "**DIP Backstop Parties**" has the meaning given to it in the Restructuring Term Sheet.

1.33.   "**DIP Credit Agreement**" means that certain debtor-in-possession credit agreement (as amended, restated, supplemented or otherwise modified in accordance with its terms), by and among Research Now Group, LLC and Dynata, LLC, as borrowers, each of the guarantors named therein, the DIP Agent, and the DIP Lenders from time to time party thereto, consistent in all respects with the terms set forth in **Annex 4** to the Restructuring Term Sheet (as may be amended, modified, or supplemented).

1.34.   "**DIP Facility**" means the $31.5 million super-priority senior secured debtor-in-possession financing facility to the Debtors in accordance with the terms, and subject in all respects to the conditions, set forth in the DIP Credit Agreement and the DIP Orders.

1.35.   "**DIP Facility Claims**" means any Allowed Claim held by the DIP Lenders or DIP Agent arising under or related to the DIP Facility.

1.36.   "**DIP Lenders**" means, collectively, the banks, financial institutions, and other lenders party to the DIP Credit Agreement from time to time, each solely in their capacity as such.

1.37.   "**DIP Loan Documents**" means, collectively, the DIP Credit Agreement and any and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the DIP Credit Agreement.

1.38.    "**DIP Orders**" means the Interim DIP Order and the Final DIP Order.

1.39.    "**DIP Professional Fees**" means, as of the Effective Date, all accrued and unpaid professional fees and expenses payable under the DIP Orders to the professionals for the DIP Agent and the DIP Lenders.

1.40.    "**Disclosure Statement**" means that certain *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Dynata, LLC and Its Debtor Affiliates*, dated as of May 21, 2024, that was prepared and distributed in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018 and applicable non-bankruptcy law.

1.41.    "**Disputed**" means, with respect to any Claim, or any portion thereof, (i) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code, or (ii) for which a Proof of Claim or a motion for payment has been timely filed with the Bankruptcy Court, to the extent the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; *provided*, *however*, in no event shall a Claim that is deemed Allowed under the Plan be classified as a Disputed Claim.

1.42.    "**Distribution**" means  payment or distribution of consideration to holders of Allowed Claims pursuant to this Plan in respect of the holder's Allowed Claim.

1.43.    "**Distribution Agent**" means an entity selected to make Distributions at the direction of the Reorganized Debtors, which may include the Claims Agent or the Reorganized Debtors.

1.44.    "**Distribution Record Date**" means the Confirmation Date.

1.45.    "**D&O Liability Insurance Policies**" means any insurance policy for, among others, directors, members, trustees, and officers liability (or any equivalents) maintained by the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.46.    "**Effective Date**" means the date on which a notice of effectiveness is filed with the Bankruptcy Court confirming that (i) all conditions in <u>Article IX.A</u> of the Plan have been satisfied or waived as provided for in <u>Article IX.B</u> and (ii) consummation of the Restructuring Transactions has occurred.

1.47.    "**Entity**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

1.48.    "**Estate**" means the estate of a Debtor in the applicable Chapter 11 Case, as created under section 541 of the Bankruptcy Code.

1.49.    "**Exculpated Parties**" means, collectively, and in each case in its capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; and (iii) each Related Party of each Entity in clause (i) through (ii).

1.50.    "**Executory Contract**" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.51.    "**Exhibit**" means an exhibit annexed to either the Plan or the Plan Supplement or as an exhibit or appendix to the Disclosure Statement (as such exhibits may be amended, supplemented, amended and restated, or otherwise modified from time to time).

1.52.    "**Existing Equity Interests**" means all Interests in New Insight Holdings, Inc. issued and outstanding as of the Petition Date.

1.53.    "**Existing First Lien Credit Agreement**" means that certain First Lien Credit Agreement (as supplemented, amended, amended and restated, or modified from time to time), dated as of December 20, 2017, by and among New Insight Holdings, Inc., Research Now Group, LLC (f/k/a Research Now Group, Inc.) and Dynata, LLC (f/k/a Survey Sampling International, LLC), the lenders party thereto, and Goldman Sachs Bank USA, as Administrative Agent.

1.54.    "**Existing Second Lien Credit Agreement**" means that certain Second Lien Credit Agreement (as supplemented, amended, amended and restated, or modified from time to time), dated as of December 20, 2017, by and among New Insight Holdings, Inc., Research Now Group, LLC (f/k/a Research Now Group, Inc.) and Dynata, LLC (f/k/a Survey Sampling International, LLC), the lenders party thereto, and Goldman Sachs Bank USA (or any successor party thereto), as Administrative Agent.

1.55.    "**Exit Backstop Parties**" has the meaning set forth in the Restructuring Term Sheet.

1.56.    "**Final DIP Order**" means a Final Order entered by the Bankruptcy Court approving entry into the DIP Facility and the use of Cash Collateral, and authorizing the entry into and performance of the DIP Credit Agreement, substantially in the form of the Interim DIP Order (subject to customary changes to make such order Final).

1.57.    "**Final Order**" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in these Chapter 11 Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed and as to which (x) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors, as applicable, or (y) if an appeal, writ of certiorari, new trial, stay, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, stay, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule

8002 of the Federal Rules of Bankruptcy Procedure; *provided* that no order shall fail to be a Final Order solely due to the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Rule 9024 of the Bankruptcy Rules may be filed with respect to such order.

1.58.    "**First Lien Ad Hoc Group**" means an ad hoc group of Consenting First Lien Lenders represented by the First Lien Ad Hoc Group Advisors.

1.59.    "**First Lien Ad Hoc Group Advisors**" means, collectively, (i) Gibson, Dunn & Crutcher LLP, as counsel to the First Lien Ad Hoc Group, (ii) PJT Partners LP, as financial advisor to the First Lien Ad Hoc Group, (iii) Mercer (US) LLC, as executive compensation advisor, (iv) Klehr Harrison Harvey Branzburg LLP, as Delaware counsel to the First Lien Ad Hoc Group, (v) any other local or foreign counsels to the First Lien Ad Hoc Group, and (vi) any other professionals or advisors retained by the First Lien Ad Hoc Group.

1.60.    "**First Lien Agent**" means Goldman Sachs Bank USA, in its capacity as administrative agent and collateral agent under the Existing First Lien Credit Agreement.

1.61.    "**First Lien Agent's Counsel**" means Cahill Gordon & Reindel LLP and Richards, Layton & Finger, P.A.

1.62.    "**First Lien Claim**" means any First Lien Term Loan Claim or Revolving Credit Loan Claim.

1.63.    "**First Lien Lender**" means any lender under the Existing First Lien Credit Agreement.

1.64.    "**First Lien Term Loan Claim**" means any Claim arising under or related to the term loans pursuant to the Existing First Lien Credit Agreement or any other loan documents related thereto.

1.65.    "**First Out Term Loan Agent**" means the administrative agent under the First Out Term Loan Credit Agreement, which shall be selected by the Required Consenting First Lien Lenders and disclosed in the Plan Supplement.

1.66.    "**First Out Term Loan Credit Agreement**" means that certain credit agreement (as amended, restated, supplemented, or otherwise modified in accordance with its terms) governing the First Out Term Loan Facility, by and among Research Now Group, LLC and Dynata, LLC as borrowers, the guarantors named therein, the First Out Term Loan Agent and the lenders party thereto, which shall be consistent with the Restructuring Term Sheet and First Out Term Loan Facility Term Sheet, and filed as part of the Plan Supplement.

1.67.    "**First Out Term Loan Credit Documents**" means the First Out Term Loan Credit Agreement and any related notes, guaranties, collateral agreements, certificates, documents and instruments related to or executed in connection with the First Out Term Loan Credit Agreement, which shall be consistent with the Restructuring Support Agreement and the First Out Term Loan Facility Term Sheet and filed as part of the Plan Supplement.

1.68.    "**First Out Term Loan Facility**" means the new priority senior secured term loan credit facility of up to $81.5 million, under and evidenced by the First Out Priority Term Loan Credit Agreement, which shall be on the terms set forth in the First Out Priority Term Loan Facility Term Sheet and otherwise consistent with the Restructuring Term Sheet and consisting of: (i) $50 million in new money exit term loans (the "**First Out New Money Term Loans**"), and (ii) $31.5 million of converted DIP Facility Claims (the "**First Out Converted Term Loans**", and together with the First Out New Money Term Loans, the "**First Out Term Loans**").

1.69.    "**First Out Term Loan Facility Term Sheet**" means the First Out term loan facility term sheet attached as **Annex 2** to the Restructuring Term Sheet, as such term sheet may be amended, modified, or supplemented in accordance with the Restructuring Support Agreement.

1.70.    "**First Out Term Loan Syndication Documents**" means the syndication procedures for the First Out Term Loans which are reasonably satisfactory to the Debtors and the Required Consenting First Lien Lenders, which procedures shall be described in the Plan Supplement.

1.71.    "**General Unsecured Claims**" means any Claim, against any Debtor, that is not an Administrative Claim, DIP Facility Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, First Lien Claim, Second Lien Term Loan Claim, Intercompany Claim, or Section 510(b) Claim.

1.72.    "**Governmental Unit**" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

1.73.    "**Holder**" means any Entity that is the legal and/or beneficial owner of a Claim as of the applicable date of determination. For the avoidance of doubt, if a Claim is subject to an unsettled trade as of the Voting Record Date, the Holder shall be deemed to be the Entity that is the legal and/or beneficial owner of such claim after such trade has settled.

1.74.    "**Impaired**" means, with respect to a Claim, Existing Equity Interest or Class of Claims or Existing Equity Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

1.75.    "**Incremental Second Out Take Back Term Loan Amount**" means the 5% increase in the Second Out Take Back Term Loans allocated to holders of Allowed Revolving Credit Loan Claims who elect to receive such increase in the Second Out Take Back Term Loans in lieu of their Pro Rata share of the New Common Stock.

1.76.    "**Indemnification Agreement**" means any organizational or employment and/or service document or agreement of or with the Debtors and currently in place that provides for the indemnification of any current or former director, officer, agent or employee of the Debtors with respect to all present and future actions, suits and proceedings against the Debtors or such directors, officers, agents or employees based upon any act or omission for or on behalf of the Debtors.

1.77. "**Intercompany Claim**" means any Claim by a Debtor or non-Debtor affiliate against another Debtor.

1.78. "**Intercompany Interest**" means an Interest held by a Debtor or non-Debtor affiliate in another Debtor or non-Debtor affiliate.

1.79. "**Interest**" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor.

1.80. "**Interim DIP Order**" means the interim order of the Bankruptcy Court authorizing the entry into and performance of the DIP Credit Agreement and use of Cash Collateral.

1.81. "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

1.82. "**Issuance Amount**" means the shares of New Common Stock or such other amount as may be agreed by the Debtors and the Required Consenting First Lien Lenders.

1.83. "**Lien**" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

1.84. "**Loan Agents**" means the First Lien Agent and the Second Lien Agent.

1.85. "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.86. "**MIP**" means a management incentive plan, providing for the issuance of up to 11% of the New Common Stock, to be approved by the New Board and adopted by the Reorganized Parent on the Effective Date, which will be substantially similar to the terms set forth in the annexes to the Restructuring Term Sheet.

1.87. "**New ABL Facility**" means the new ABL facility, comprised of asset-based revolving loans, which shall be consistent with the terms set forth in the Restructuring Term Sheet and otherwise consistent with the Restructuring Support Agreement.

1.88. "**New ABL Facility Agreement**" means that certain credit agreement (as amended, restated, supplemented, or otherwise modified in accordance with its terms) governing the New ABL Facility, by and among Research Now Group, LLC and Dynata, LLC as borrowers, the guarantors named therein, and the lenders party thereto, which shall be consistent with the Restructuring Term Sheet.

1.89. "**New Board**" means the initial board of directors (or similar governing body) of Reorganized Parent as selected in accordance with the New Corporate Governance Documents, the Restructuring Term Sheet and the New Operating Agreement and as disclosed in the Plan Supplement.

1.90.   "**New Common Stock**" means the shares of common stock of the Reorganized Parent (other such other entity to be determined by the Required Consenting First Lien Lenders) to be authorized, issued and outstanding on and after the Effective Date, with governance rights set forth in the Plan Supplement which shall include reasonable and customary minority protections.

1.91.   "**New Operating Agreement**" means the operating agreement (as amended, restated, supplemented or otherwise modified in accordance with its terms), including all annexes, exhibits, and schedules thereto, that will govern certain matters related to the governance of Reorganized Parent and the New Common Stock, which agreement shall become effective on the Effective Date and be consistent with the terms and conditions of the Restructuring Support Agreement and the Restructuring Term Sheet.

1.92.   "**New Corporate Governance Documents**" means the new corporate governance documents, including the New Operating Agreement, charters, bylaws, operating agreements, or other organization or formation documents, as applicable; *provided*, *however*, the Debtors and the Required Consenting First Lien Lenders will use commercially reasonable efforts to work with the holders of Revolving Credit Loan Claims who receive the New Common Stock to incorporate appropriate bank regulatory protections and provisions into the relevant shareholders agreement to ensure that regulations or laws applicable to holders of the New Common Stock do not run afoul of any and all regulations governing their receipt of such equity interests, including, without limitations, the Bank Holding Company Act and any regulations promulgated thereunder.

1.93.   "**New Warrant Agreement**" means the warrant agreement attached as an annex to the Plan Supplement, including all annexes, exhibits and schedules thereto, that will govern the terms of the New Warrants, which agreement shall (i) become effective on the Effective Date, and (ii) be consistent with the terms and conditions set forth in the Restructuring Term Sheet.

1.94.   "**New Warrants**" means the 5 year warrants issued by Reorganized Parent (or other such entity determined by the Required Consenting First Lien Lenders) on the Effective Date, which shall be in the form and manner consistent with the Restructuring Term Sheet and the New Warrant Agreement.

1.95.   "**New Warrants Recovery**" means, each applicable holders' Pro Rata share of New Warrants to acquire 12.5% of the New Common Stock.

1.96.   "**Ordinary Course Professionals Order**" means an order of the Bankruptcy Court approving a motion to employ ordinary course professionals in these Chapter 11 Cases.

1.97.   "**Other Priority Claim**" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, a Priority Tax Claim or a Professional Fee Claim.

1.98.   "**Other Secured Claim**" means any Secured Claim against any Debtor other than DIP Facility Claims, First Lien Claims or Second Lien Term Loan Claims.

1.99.    "**Parent**" means New Insight Holdings, Inc.

1.100.    "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

1.101.    "**Petition Date**" means the date on which the Debtors filed their petition for relief commencing these Chapter 11 Cases.

1.102.    "**Plan**" means, collectively, this joint prepackaged chapter 11 plan of reorganization, the Exhibits, all annexes, supplements and schedules hereto, and any document to be executed, delivered, assumed or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement, in each case as may be amended, modified or supplemented from time to time in accordance with the terms hereof and the Restructuring Support Agreement.

1.103.    "**Plan Supplement**" means one or more supplements to the Plan containing certain agreements, lists, documents or forms of documents and/or schedules or exhibits relating to the implementation of the Plan, which may include certain agreements, lists, documents or forms of documents and/or schedules or exhibits necessary to comply with Bankruptcy Code sections 1123(a)(7) and 1129(a)(5).

1.104.    "**Preference Actions**" means any and all avoidance, recovery or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under section 547 of the Bankruptcy Code.

1.105.    "**Prepack Scheduling Order**" means an order of the Bankruptcy Court scheduling a combined hearing with respect to approval of the Disclosure Statement and confirmation of this Plan.

1.106.    "**Priority Tax Claim**" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.107.    "**Professional**" means: (i) any Entity employed in these Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code and (ii) any Entity seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.108.    "**Professional Claims Bar Date**" means forty-five (45) days after the Effective Date.

1.109.    "**Professional Fee Claim**" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for compensation for services rendered or reimbursement of costs, expenses or other charges incurred by Professionals after the Petition Date and prior to the Effective Date; *provided*, that Professional Fee Claims shall not include Restructuring Expenses.

1.110. "**Professional Fee Escrow Account**" means an interest-bearing account funded by the Debtors in Cash on the Effective Date pursuant to Article II.A(ii) of the Plan, in an amount equal to the Professional Fee Reserve Amount.

1.111. "**Professional Fee Reserve Amount**" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.A(i) of the Plan.

1.112. "**Proof of Claim**" means a proof of claim filed against any Debtor in these Chapter 11 Cases.

1.113. "**Pro Rata**" means, at any time, the proportion that the face amount of a Claim or Existing Equity Interest in a particular Class bears to the aggregate face amount of all Claims or Existing Equity Interests in that Class, unless the Plan provides otherwise.

1.114. "**Reinstated**" means, with respect to any Claim: (i) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim in accordance with section 1124 of the Bankruptcy Code or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (d) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by the Holder of such Claim as a result of such failure; and (e) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim.

1.115. "**Related Parties**" means, collectively, with respect to any Entity or Person, including each Released Party and Exculpated Party, such Entity or Person's, current, former and future Affiliates, member firms and associated entities, and with respect to each of the foregoing, their Affiliates, current and former directors, current and former managers, current and former officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals (including, for the avoidance of doubt, the First Lien Ad Hoc Group Advisors and the Second Lien Ad Hoc Group Advisors); *provided*, *however*, for the avoidance of doubt, any Affiliates of any Revolving Credit Lender (including any separate branch of a Revolving Credit Lender) shall not be deemed to be either a Related Party of such Revolving Credit Lender or a Revolving Credit Lender itself, unless such Affiliate has itself has submitted a

Ballot or specifically authorized a third party to submit a Ballot on its behalf. The Revolving Credit Lenders voting on this Plan are doing so only in their capacity as holders of Revolving Credit Loan Claims as of the Voting Record Date, this Plan does not cover any other Claims or Interests other than the Revolving Credit Loan Claims that are now owned or subsequently acquired by the Revolving Credit Lenders that submit a Ballot with regards to this Plan, and the provisions of this Plan shall only apply to such trading desk(s), fund(s), and/or business group(s) reflected on the Ballot of such Revolving Credit Lender and shall not apply to any other trading desk, fund, or business group of the Revolving Credit Lender so long as they are not acting at the direction or for the benefit of such Revolving Credit Lender or such Revolving Credit Lender's investment in the Debtors.

1.116. "**Released Party**" means, each of, and in each case in its capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Sponsors and each other holder of Interests in the Parent; (iv) the Consenting Lenders; (v) the First Lien Lender Ad Hoc Group, (vi) the Second Lien Ad Hoc Group; (vii) the DIP Lenders; (viii) the DIP Backstop Parties; (ix) the Exit Backstop Parties; (x) the DIP Agent; (xi) the First Lien Agent, (xii) the Second Lien Agent and any predecessor thereto; (xiii) the First Lien Lenders and Second Lien Lenders that vote to accept the Plan; (xiv) each Related Party of each Entity in clause (i) through (xiii); *provided* that any holder of a Claim or Interest that objects to or opts out of the third party releases contained therein, shall not be a "Released Party."

1.117. "**Releasing Party**" means, each of, and in each case in its capacity as such: (i) the Released Parties; (ii) each holder of a Claim entitled to vote to accept or reject the Plan that (a) votes to accept the Plan or (b) votes to reject the Plan or does not vote to accept or reject the Plan but does not affirmatively elect to "opt out" of being a Releasing Party by checking the "opt out" box on the  Ballot and returning it in accordance with the instructions set forth thereon indicating that they opt not to grant the releases contained in the Plan; (iii) each holder of a Claim or Interest that (x) is Unimpaired and presumed to accept the Plan, or (y) that is Impaired and is deemed to reject the Plan, in each case that does not affirmatively elect to "opt out" of being a Releasing Party by checking the "opt out" box on the Opt-Out Election Form and returning it in accordance with the instructions set forth thereon indicating that they opt not to grant the releases contained in the Plan; and (iv) each Related Party of each Entity in clause (i) through (iii) to the extent such Related Party can be bound by law or contract to the releases contemplated herein.

1.118. "**Reorganized Debtors**" means the Debtors from and after the Effective Date.

1.119. "**Reorganized Parent**" means New Insight Holdings, Inc. as reorganized pursuant to the Restructuring, and any successor(s) thereto.

1.120. "**Required Consenting First Lien Lenders**" has the meaning set forth in the Restructuring Support Agreement.

1.121. "**Required Consenting Second Lien Lenders**" means, as of any date of determination, Consenting Second Lien Lenders who collectively (i) own (or have voting control of) at least 50.01% of the aggregate outstanding principal amount of each of the Second Lien Term Loans held by the Second Lien Ad Hoc Group at such time and (ii) constituting at least two of the

Consenting Second Lien Term Loan Lenders that are members of the Second Lien Ad Hoc Group. A consenting Second Lien Term Loan Lender and its Affiliates who are subject to this Agreement shall be deemed to collectively constitute one (1) Consenting Second Lien Term Loan Lender for purposes of clause (ii) of this definition.

1.122.   "**Restructuring**" means a transaction, negotiated in good faith and at arms' length between the parties to the Restructuring Support Agreement, that will effectuate a financial restructuring of the Debtors' capital structure and financial obligations, on the terms and conditions set forth in the Restructuring Support Agreement, the Restructuring Term Sheet, this Plan and related documents.

1.123.   "**Restructuring Expenses**" means the reasonable and documented fees and out-of-pocket expenses of the (i) First Lien Ad Hoc Group Advisors (including, in each case, fees and expenses incurred before, on, or after the Petition Date, to the extent applicable) in accordance with their respective engagement letters or fee letters with the Company Parties and/or any applicable order of the Bankruptcy Court; *provided* that any and all fixed monthly fees, restructuring fees, liability management fees, and/or transaction fees shall be deemed reasonable to the extent provided for in an engagement or fee letter between the Debtors and any First Lien Ad Hoc Group Advisor, (ii) First Lien Agent's Counsel (including, in each case, fees and expenses incurred before, on, or after the Petition Date, to the extent applicable), (iii) the Second Lien Ad Hoc Group Advisors, (including, in each case, fees and expenses incurred before, on, or after the Petition Date, to the extent applicable) in accordance with their respective engagement letters or fee letters with the Company Parties and/or any applicable order of the Bankruptcy Court; provided that any and all fixed monthly fees, restructuring fees, liability management fees, and/or transaction fees shall be deemed reasonable to the extent provided for in an engagement letter between any Company Party and any Second Lien Ad Hoc Group Advisor, (iv) Second Lien Agent's Counsel (including, in each case, fees and expenses incurred before, on, or after the Petition Date, to the extent applicable), and (iv) one lead counsel to the Sponsors.

1.124.   **Restructuring Support Agreement**" means that certain Restructuring Support Agreement (as amended, restated, supplemented or otherwise modified in accordance with its terms), including all annexes, exhibits, and schedules thereto, dated as of May 21, 2024, by and among the Debtors, the Consenting First Lien Lenders, the Consenting Second Lien Lenders, and the Sponsors, attached as __**Exhibit D**__ to the Disclosure Statement

1.125.   "**Restructuring Term Sheet**" means the restructuring term sheet attached as __**Exhibit B**__ to the Restructuring Support Agreement, as such term sheet may be amended, modified, or supplemented in accordance with the Restructuring Support Agreement.

1.126.   "**Restructuring Transactions**" means the restructuring transactions for the Debtors, in accordance with, and subject to the terms and conditions set forth in, the Restructuring Support Agreement, the Plan and the Plan Supplement.

1.127.   "**Revolving Credit Lender**" means the several banks and other financial institutions or entities from time to time party to the Existing First Lien Credit Agreement as lenders of the Revolving Credit Loans.

1.128. "**Revolving Credit Loans**" means any revolving loan made and outstanding pursuant to a "Revolving Commitment" under and as defined the Existing First Lien Credit Agreement.

1.129. "**Revolving Credit Loan Claims**" means all claims held by the Revolving Credit Lenders, in their capacities as such, derived from, based upon, or secured pursuant to the Existing First Lien Credit Agreement and the "Loan Documents" (as defined in the Existing First Lien Credit Agreement), including any aggregate principal amount outstanding, plus all interest, fees, expenses, costs, and other charges arising under or related to the Obligations (as defined in the Existing First Lien Credit Agreement), but excluding, for the avoidance of doubt, any First Lien Term Loan Claims.

1.130. "**Second Lien Ad Hoc Group**" means an ad hoc group of Consenting Second Lien Term Loan Lenders represented by the Second Lien Ad Hoc Group Advisors.

1.131. "**Second Lien Ad Hoc Group Advisors**" means, collectively, (a) Vinson & Elkins, LLP, as counsel to the Second Lien Ad Hoc Group, (ii) Lazard Freres & Co. LLC, as financial advisor to the Second Lien Ad Hoc Group, and (iii) Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel to the Second Lien Ad Hoc Group.

1.132. "**Second Lien Agent**" means Acquiom Agency Services LLC, in its capacity as administrative agent and collateral agent under the Existing Second Lien Credit Agreement through the effective date of its resignation, as well as its successor agent.

1.133. "**Second Lien Agent's Counsel**" means Pryor Cashman LLP and one Delaware counsel, in their capacities as counsel to the Administrative Agent and Collateral Agent under the Existing Second Lien Credit Agreement.

1.134. "**Second Lien Lenders**" means the lenders under the Existing Second Lien Credit Agreement.

1.135. "**Second Lien Term Loan Claim**" means any Claim arising under or related to the Existing Second Lien Credit Agreement or any other loan documents related thereto, including any accrued and unpaid interest, premiums (if any), fees, makewholes (if any), and other expenses arising under the Existing Second Lien Credit Agreement.

1.136. "**Second Out Take Back Term Loan Agent**" means the administrative agent under the Second Out Take Back Term Loan Credit Agreement.

1.137. "**Second Out Take Back Term Loan Credit Agreement**" means that certain credit agreement (as amended, restated, supplemented, or otherwise modified in accordance with its terms) governing the Second Out Take Back Term Loan Facility, by and among Research Now Group, LLC and Dynata, LLC as borrowers, the guarantors named therein, the Second Out Take Back Term Loan Agent and the lenders party thereto, which shall be consistent with the Restructuring Term Sheet and the Second Out Take Back Term Loan Term Sheet.  For the avoidance of doubt, the First Out Term Loan Credit Agreement and the Second Out take Back Term Loan Credit Agreement may, with the consent of the Required Consenting First Lien Lenders, be documented through a single credit agreement.

1.138. "**Second Out Take Back Term Loan Documents**" means the Second Out Take Back Term Loan Credit Agreement and any related notes, guaranties, collateral agreements, certificates, documents and instruments related to or executed in connection with the Second Out Take Back Term Loan Credit Agreement, which shall be consistent with the Second Out Take Back Term Loan Term Sheet and filed as part of the Plan Supplement.

1.139. "**Second Out Take Back Term Loan Facility**" means the senior secured term loan facility of $ 694 million, provided that such amount shall be increased by the amount of Incremental Second Out Take Back Term Loan Amount, pursuant to and evidenced by the Second Out Take Back Term Loan Credit Agreement, which shall be on the terms set forth in the Second Out Take Back Term Loan Term Sheet and otherwise consistent with the Restructuring Support Agreement.

1.140. "**Second Out Take Back Term Loan Term Sheet**" means the exit term loan term sheet attached as **Annex 3** to the Restructuring Term Sheet, as such term sheet may be amended, modified, or supplemented only in accordance with the Restructuring Support Agreement.

1.141. "**Second Out Take Back Term Loans**" means the term loans made under the Second Out Take Back Term Loan Facility.

1.142. "**Section 510(b) Claim**" means a Claim subordinated pursuant to Section 510(b) of the Bankruptcy Code.

1.143. "**Secured Claim**" means a Claim against a Debtor that is secured by a Lien on property in which such Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.144. "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

1.145. "**Solicitation**" means the Debtors' formal request for acceptances of the Plan, consistent with sections 1125 and 1126 of the Bankruptcy Code, rules 3017 and 3018 of the Bankruptcy Rules and applicable non-bankruptcy law.

1.146. "**Solicitation Agent**" means Kroll, LLC, the notice, claims and solicitation agent retained by the Debtors for these Chapter 11 Cases.

1.147. "**Sponsors**" means, collectively, Court Square Capital Partners, Court Square Capital Partners III, L.P., Court Square Capital Partners III-A, L.P., Court Square Capital Partners (Offshore) III, L.P. Capital Court Square Capital Partners (Executive) III, L.P., HGGC Saber Topco LLC, HGGC, LLC, HGGC Fund II, L.P, HGGC Fund II-A, L.P., HGGC Fund II-B, L.P., HGGC Fund II-C, L.P., HGGC Fund II-D, L.P., HGGC Associates Fund II, L.P. and HGGG Affiliate Investors II, L.P.

1.148. "**UCC**" means the Uniform Commercial Code as the same may from time to time be in effect in the State of Delaware or the Uniform Commercial Code as in effect in any other state to the extent it may be applicable to any security interests in property of the Debtors.

1.149. "**Unclaimed Distribution**" means any distribution under the Plan or as otherwise authorized by the Bankruptcy Court on account of an Allowed Claim to a Holder that, within six (6) months from when the distribution was first made, has not: (i) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (ii) given notice to Reorganized Parent of an intent to accept a particular distribution; (iii) responded to Reorganized TNT's request for information necessary to facilitate a particular distribution; (iv) taken delivery of such distribution or where such distribution was returned for lack of a current address or otherwise; or (e) taken any other action necessary to facilitate such distribution.

1.150. "**Unexpired Lease**" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.151. "**Unimpaired**" means any Claim or Existing Equity Interest that is not designated as Impaired.

1.152. "**Unimpaired Claim**" means Administrative Claims, Priority Tax Claims, Other Secured Claims, Other Priority Claims, DIP Facility Claims and General Unsecured Claims.

1.153. "**U.S.**" means the United States of America.

1.154. "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

1.155. "**Voting Classes**" means collectively, Classes 3A, 3B, and 4.

1.156. "**Voting Record Date**" means the date for determining which Holders are entitled to receive the Disclosure Statement and vote to accept or reject the Plan, as applicable, which date is May 9, 2024 for all Holders of Claims in the Voting Classes.

## C.    Consultation, Notice, Information, and Consent Rights

Notwithstanding anything herein to the contrary, all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement, as applicable, and as respectively set forth therein, with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.B hereof) and fully enforceable as if stated in full herein until such time as the Restructuring Support Agreement is terminated in accordance with its terms.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement, as applicable, shall not impair such rights and obligations.

## ARTICLE II.

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, DIP Facility Claims, and U.S. Trustee Fees are not classified and are not entitled to vote on the Plan.

### A.    Administrative Claims

Subject to subparagraph (i) below, in full and complete satisfaction, settlement, discharge and release of and in exchange for each Allowed Administrative Claim (except to the extent that (a) the Holder of such Allowed Administrative Claim agrees in writing to less favorable treatment or (b) the Holder of such Allowed Administrative Claim has been paid in full during these Chapter 11 Cases), the Debtors or Reorganized Debtors, as applicable, at the option of the Debtors or Reorganized Debtors, as applicable, and with the reasonable consent of the Required Consenting First Lien Lenders, (i) shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the due and unpaid portion of its Allowed Administrative Claim on the later of (x) the Effective Date, or as soon thereafter as is reasonably practicable and (y) as soon as practicable after such Allowed Administrative Claim becomes due and payable, (ii) shall provide such other treatment to render such Allowed Administrative Claim Unimpaired or (iii) shall provide such other treatment as the Holder of such Allowed Administrative Claim may agree to or otherwise as permitted by section 1129(a)(9) of the Bankruptcy Code; *provided*, that Administrative Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

(i)    Professional Fee Claims

Professionals (a) asserting a Professional Fee Claim shall deliver to the Debtors their estimates for purposes of the Debtors computing the Professional Fee Reserve Amount no later than five (5) Business Days prior to the anticipated Effective Date; *provided*, that, for the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court; *provided*, *further*, that, if a Professional does not provide an estimate, the Debtors shall estimate the unpaid and unbilled fees and expenses of such Professional; and (b) asserting a Professional Fee Claim for services rendered before the Confirmation Date, for the avoidance of doubt, excluding any claims for Restructuring Expenses, must file and serve on the Reorganized Debtors and the U.S. Trustee an application for final allowance of such Professional Fee Claim no later than the Professional Claims Bar Date; *provided*, that any Professional who is subject to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order. For the avoidance of doubt, no fee applications will be required in respect of services performed by Professionals on and after the Confirmation Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing

of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for a hearing on twenty-one (21) days' notice.

        (ii)      <u>Professional Fee Escrow Account</u>

On the Effective Date, the Debtors shall establish the Professional Fee Escrow Account and fund such account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash from the Professional Fee Escrow Account within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim. If the Professional Fee Escrow Account is depleted, each Holder of an Allowed Professional Fee Claim will be paid the full amount of such Allowed Professional Fee Claim by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim without any further action of the Bankruptcy Court. All amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid in full shall revert to the Reorganized Debtors.

## B.      Priority Tax Claims

In full and complete satisfaction, settlement, discharge and release of and in exchange for each Allowed Priority Tax Claim (except to the extent that (i) the Holder of such Allowed Priority Tax Claim agree in writing to less favorable treatment or (ii) the Holder of such Allowed Priority Tax Claim has been paid in full during these Chapter 11 Cases), on the Effective Date, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

## C.      DIP Facility Claims

The DIP Facility Claims shall be deemed to be Allowed in the full amount due and owing under the DIP Credit Agreement as of the Effective Date, including, for the avoidance of doubt, (i) the principal amount outstanding under the DIP Facility on that date; (ii) all interest accrued and unpaid thereon through and including the date of payment; and (iii) all accrued fees, expenses, and indemnification obligations payable under DIP Loan Documents. For the avoidance of doubt, the DIP Facility Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable, contractual, or otherwise), counterclaim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.  For the avoidance of doubt, DIP Professional Fees related to the DIP Facility shall be paid in full in Cash in accordance with the terms of the DIP Orders and this Plan, as applicable.

On the Effective Date, in full and complete satisfaction, settlement, discharge and release of and in exchange for each Allowed DIP Facility Claim (except to the extent that the Holder of such Allowed DIP Facility Claim agree in writing to less favorable treatment), each Holder of an Allowed DIP Facility Claims shall (i) receive its Pro Rata share of the First Out Converted Term Loans and (ii) shall be offered Pro Rata share First Out New Money Term Loans in accordance with the terms of the First Out Term Loan Credit Agreement.

D.    **U.S. Trustee Fees**

Notwithstanding anything herein to the contrary, on the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation pursuant to 28 U.S.C. § 1930(a)(6). On and after the Effective Date, to the extent these Chapter 11 Cases remains open, and for so long as the Reorganized Debtors remain obligated to pay quarterly fees, the Reorganized Debtors shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtors or Reorganized Debtors, as applicable, shall remain obligated to pay quarterly fees to the the U.S. Trustee until the earliest of these Chapter 11 Cases being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EXISTING EQUITY INTERESTS

A.    **Introduction**

All Claims and Existing Equity Interests, except Administrative Claims, Priority Tax Claims, DIP Facility Claims, and U.S. Trustee Fees are placed in the Classes set forth below in accordance with section 1123(a)(1) of the Bankruptcy Code. The categories of Claims and Existing Equity Interests listed below classify Claims and Existing Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Existing Equity Interest is in a particular Class only to the extent that any such Claim or Existing Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

B.    **Summary of Classification and Treatment of Classified Claims and Existing Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3A | First Lien Term Loan Claims | Impaired | Entitled to Vote |
| 3B | Revolving Credit Loan Claims | Impaired | Entitled to Vote |
| 4 | Second Lien Term Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Presumed to Accept |
| 6 | Intercompany Claims | Unimpaired; Impaired | Presumed to Accept; Deemed to Reject |
| 7 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Unimpaired; Impaired | Presumed to Accept; Deemed to Reject |

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 9 | Existing Equity Interests | Impaired | Deemed to Reject |

## C.    Classification and Treatment of Claims and Existing Equity Interests

Class 1 – Other Secured Claims.

(A)    <u>Classification</u>: Class 1 consists of Other Secured Claims against each Debtor.

(B)    <u>Treatment</u>: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, to the extent such claim has not already been paid in full during these Chapter 11 Cases, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Secured Claim, each Holder thereof shall receive, at the option of the Debtors and with the reasonable consent of the Required Consenting First Lien Lenders: (i) payment in full in cash of the due and unpaid portion of its Other Secured Claim on the later of (x) the Effective Date (or as soon thereafter as reasonably practicable) and (y) as soon as practicable after the date such claim becomes due and payable; (ii) the collateral securing its Allowed Other Secured Claim; (iii) reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

(C)    <u>Impairment and Voting</u>: Class 1 is Unimpaired by the Plan. Each Holder of an Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan.

Class 2 – Other Priority Claims.

(A)    <u>Classification</u>: Class 2 consists of Other Priority Claims against each Debtor.

(B)    <u>Treatment</u>: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, to the extent such claim has not already been paid in full during these Chapter 11 Cases, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Other Priority Claim, each Holder thereof shall receive treatment consistent with the provisions of

section 1129(a)(9) of the Bankruptcy Code, in each case, as determined by the Debtors with the reasonable consent of the Required Consenting First Lien Lenders.

(C) <u>Impairment and Voting</u>: Class 2 is Unimpaired by the Plan. Each Holder of an Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan.

Class 3A – First Lien Term Loan Claims.

(A) <u>Classification</u>: Class 3 consists of First Lien Term Loan Claims. The First Lien Term Loan Claims shall be Allowed in an aggregate principal amount of no less than $920,767,205.45, *plus* all other unpaid and outstanding obligations including any accrued and unpaid interest thereon (including at any applicable default rate), and all applicable fees, costs, charges, expenses, premiums or other amounts arising under the Existing First Lien Credit Agreement, in each case, as of the Petition Date. The First Lien Term Loan Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable, contractual, or otherwise), counterclaim, defense, disallowance, impairment, surcharge under section 506(c) of the Bankruptcy Code, objection, any challenges under applicable law or regulation, or any other claim or defense.

(B) <u>Treatment</u>: Except to the extent that a holder of an allowed First Lien Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each allowed First Lien Term Loan Claim, on the Effective Date each holder shall directly or through a designee receive its Pro Rata share, along with the Holders of the Revolving Loan Claims, of:

(i) the option to fund its Pro Rata share of First Out New Money Term Loans;

(ii) the Second Out Take Back Term Loans;

(iii) 95% of the New Common Stock, subject to: (x) dilution by the MIP and the New Warrants Recovery and (y) increase as a result of any holder of

23

Revolving Credit Loan opting to receive their Pro Rata share of the Incremental Second Out Take Back Term Loan Amount; and

(iv) a cash payment of $11,669,935.04.

(C)     <u>Impairment and Voting</u>: Class 3A is Impaired by the Plan. Each Holder of a First Lien Term Loan Claim is entitled to vote to accept or reject the Plan.

Class 3B – Revolving Credit Loan Claims.

(A)     <u>Classification</u>: Class 3B consists of Revolving Credit Loan Claims. The Revolving Credit Loan Claims shall be Allowed in an aggregate principal amount of no less than $96,899,999.99, *plus* all other unpaid and outstanding obligations including any accrued and unpaid interest thereon (including at any applicable default rate), and all applicable fees, costs, charges, expenses, premiums or other amounts arising under the Existing First Lien Credit Agreement, in each case, as of the Petition Date. The Revolving Credit Loan Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable, contractual, or otherwise), counterclaim, defense, disallowance, impairment, surcharge under section 506(c) of the Bankruptcy Code, objection, any challenges under applicable law or regulation, or any other claim or defense.

(B)     <u>Treatment</u>: Except to the extent that a Holder of an Allowed Revolving Credit Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed a Revolving Credit Loan Claim, each Holder thereof shall receive its Pro Rata share, along with the Holders of Allowed First Lien Term Loan Claims, of:

(i) the option to fund its Pro Rata share of the First Out New Money Term Loans;

(ii) the Second Out Take Back Term Loans;

(iii) 95% of the New Common Stock, subject to dilution by the MIP and the New Warrants Recovery; *provided, however*, a holder of an allowed Revolving Credit Loan Claim may elect, in its sole and absolute discretion, to receive their Pro Rata share of the Incremental Second Out Take Back Term Loan Amount[3] in lieu of receiving the New Common Stock;[4] provided further, however, that as a result of any holder making the aforementioned election, the New Common Stock to be allocated to non-electing holders of Allowed Revolving Credit Loan Claims shall be increased accordingly; and

(iv) a cash payment of $11,669,935.04.

(C)    <u>Impairment and Voting</u>: Class 3B is Impaired by the Plan. Each Holder of a Revolving Credit Loan Claim is entitled to vote to accept or reject the Plan.

Class 4 – Second Lien Term Loan Claims.

(A)    <u>Classification</u>: Class 4 consists of Second Lien Term Loan Claims. The Second Lien Term Loan Claims shall be Allowed in an aggregate principal amount of no less than $250,000,000.00, as of the Petition Date, *plus* all other unpaid and outstanding obligations including any accrued and unpaid interest thereon as of the Petition Date at the applicable rate, fees, costs, charges, premiums or other amounts arising under the Existing Second Lien Term Loan Credit Agreement.

(B)    <u>Treatment</u>: Except to the extent that a holder of an allowed Second Lien Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for each allowed Second Lien Term Loan Claim, on the Effective Date, each holder shall directly or through a designee receive their Pro Rata share of :

(i) 5% of the New Common Stock, subject to dilution by the MIP and the New Warrants Recovery;

---

[3]    For the avoidance of doubt, the Pro Rata share of the Incremental Second Out Take Back Term Loans shall be determined based on the aggregate amount of Revolving Credit Loan Claims held by those Revolving Credit Lenders opting to receive additional take back debt in lieu of the New Common Stock.

[4]    For the avoidance of doubt, the New Common Stock that otherwise would have been distributed holders of Revolving Credit Loan Claims who opt instead to receive Incremental Second Out Take Back Term Loans, shall be distributed pro-rata among the other holders of First Lien Claims.

(ii) New Warrants Recovery;

(iii) a cash payment of $750,000.

(C) <u>Impairment and Voting</u>: Class 4 is Impaired by the Plan. Each Holder of a Second Lien Term Loan Claim is entitled to vote to accept or reject the Plan.

Class 5 – General Unsecured Claims.

(A) <u>Classification</u>: Class 5 consists of General Unsecured Claims against each Debtor.

(B) <u>Treatment</u>: Except to the extent that a Holder of an Allowed General Unsecured Claim has already been paid during these Chapter 11 Cases or such Holder agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option and with the reasonable consent of the Required Consenting First Lien Lenders: (i) if such Allowed General Unsecured Claim is due and payable on or before the Effective Date, payment in full, in Cash, of the unpaid portion of its Allowed General Unsecured Claim on the Effective Date; (ii) if such Allowed General Unsecured Claim is not due and payable before the Effective Date, payment in the ordinary course of business consistent with past practices; or (iii) other treatment, as may be agreed upon by the Debtors, the Required Consenting First Lien Lenders, and the Holder of such Allowed General Unsecured Claim, such that the Allowed General Unsecured Claim shall be rendered unimpaired pursuant to section 1124(1) of the Bankruptcy Code.

(C) <u>Impairment and Voting</u>: Class 5 is Unimpaired by the Plan. Each Holder of a General Unsecured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Plan.

Class 6 – Intercompany Claims.

(A) <u>Classification</u>: Class 6 consists of Intercompany Claims.

(B) <u>Treatment</u>: On the Effective Date, in full and final satisfaction, settlement, discharge and release of, and in exchange for, each Intercompany Claim, at the option of the

Reorganized Debtors and with the reasonable consent of the Required Consenting First Lien Lenders, each Allowed Intercompany Claim shall be (i) Unimpaired and Reinstated or (ii) Impaired and canceled and released without any distribution.

(C)    <u>Impairment and Voting</u>: If an Intercompany Claim in Class 6 is Unimpaired by the Plan, then such Holder of an Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. If an Intercompany Claim in Class 6 is Impaired by the Plan, then such Holder of an Intercompany Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. In either case, each Holder of an Intercompany Claim is not entitled to vote to accept or reject the Plan.

Class 7 – Section 510(b) Claims.

(A)    <u>Classification</u>: Class 7 consists of Section 510(b) Claims against each Debtor.

(B)    <u>Treatment</u>: Section 510(b) Claims shall be discharged, canceled, released, and extinguished without any distribution to Holders of such Claims.

(C)    <u>Impairment and Voting</u>: Class 7 is Impaired by the Plan, and each Holder of a Section 510(b) Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of a Section 510(b) Claim is not entitled to vote to accept or reject the Plan.

Class 8 – Intercompany Interests.

(A)    <u>Classification</u>: Class 8 consists of Intercompany Interests.

(B)    <u>Treatment</u>: On the Effective Date, in full and final satisfaction, settlement, discharge and release of, and in exchange for, each Intercompany Interest, at the option of the Reorganized Debtors and with the reasonable consent of the Required Consenting First Lien Lenders, each Intercompany Interest shall be (i) Unimpaired and Reinstated or (ii) Impaired and canceled and released without any distribution.

(C)    <u>Impairment and Voting</u>: If an Intercompany Interest in Class 8 is Unimpaired by the Plan, then such Holder of an

27

Intercompany Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. If an Intercompany Interest in Class 8 is Impaired by the Plan, then such Holder of an Intercompany Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. In either case, each Holder of an Intercompany Interest is not entitled to vote to accept or reject the Plan.

Class 9 – Existing Equity Interests.

    (A)    <u>Classification</u>: Class 9 consists of Existing Equity Interests.

    (B)    <u>Treatment</u>: On the Effective Date, the Existing Equity Interests shall be canceled, and Holders of Existing Equity Interests shall receive no recovery on account of such Existing Equity Interests.

    (C)    <u>Impairment and Voting</u>: Class 9 is Impaired by the Plan, and each Holder of an Existing Equity Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Existing Equity Interest is not entitled to vote to accept or reject the Plan.

## D.    Special Provisions Regarding Unimpaired Claims

The Debtors, the Reorganized Debtors and any other Entity shall retain all defenses, counterclaims, rights to setoff and rights to recoupment, if any, as to Unimpaired Claims. Holders of Unimpaired Claims shall not be required to file a Proof of Claim with the Court and shall retain all their rights under applicable non-bankruptcy law to pursue their Unimpaired Claims in any forum with jurisdiction over the parties. Notwithstanding anything to the contrary in the Plan, each Holder of an Unimpaired Claim shall be entitled to enforce its rights in respect of such Unimpaired Claim against the Debtors or the Reorganized Debtors, as applicable, until such Unimpaired Claim has been either (i) paid in full (a) on terms agreed to between the Holder of such Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, or (b) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (ii) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. If the Debtors or the Reorganized Debtors dispute any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

Notwithstanding anything to the contrary in the Plan, until an Allowed Claim in Class 1, 2 or 5 that arises prior to the Effective Date has been (x) paid in full in accordance with applicable law, or on terms agreed to between the Holder of such Claim and the Debtors (or Reorganized Debtors) or in accordance with the terms and conditions of the particular transaction giving rise to such Claim, or (y) resolved pursuant to the disputed claims procedures set forth in this <u>Article III.D</u> and <u>Article VIII</u> of the Plan: (i) such Claim shall not be deemed settled, satisfied, resolved,

released, discharged, or enjoined by any provision of the Plan, and (ii) the applicable Reorganized Debtor shall remain liable for such Claims. For the avoidance of doubt, upon the satisfaction of subpart (x) or (y) of the foregoing sentence, subparts (i)-(ii) of the foregoing sentence shall no longer apply under the Plan. Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Reorganized Debtors in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

**E.    Subordinated Claims**

Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, reserve the right to re-classify any Claim or Existing Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto.

**ARTICLE IV.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.    Presumed Acceptance of the Plan**

Classes 1, 2, 5, 6 (if so treated) and 8 (if so treated) are Unimpaired by the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**B.    Deemed Rejection of the Plan**

Classes 6 (if so treated), 7, 8 (if so treated) and 9 are Impaired by the Plan and are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**C.    Voting Classes**

Each Holder of an Allowed Claim in the Voting Classes as of the applicable Voting Record Date is entitled to vote to accept or reject the Plan.

**D.    Acceptance by Impaired Classes of Claims**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

**E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtors may request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code or that is deemed to reject the Plan. The Debtors, with the reasonable consent of the Required Consenting First Lien Lenders, and in accordance with Article XII.A of the Plan,

reserve the right to modify the Plan, the Plan Supplement or the Disclosure Statement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**F.      Plan Cannot Be Confirmed as to Some or All Debtors**

If the Plan cannot be confirmed as to any Debtor, then the Debtors, with the reasonable consent of the Required Consenting First Lien Lenders and without prejudice to and subject to the respective parties' rights under the Restructuring Support Agreement, (i) may revoke the Plan as to such Debtor or (ii) may revoke the Plan as to any Debtor (and any such Debtor's Chapter 11 Case may be converted, continued or dismissed) and confirm the Plan as to the remaining Debtors to the extent required without the need for re-solicitation as to any Holder of a Claim against and/or Existing Equity Interest in a Debtor for which the Plan is not so revoked.

**G.      Elimination of Vacant Classes**

Any Class of Claims or Existing Equity Interests that is not populated as of the commencement of the Confirmation Hearing by an Allowed Claim or Existing Equity Interest, or a Claim or Existing Equity Interest that is temporarily Allowed under Bankruptcy Rule 3018, shall be deemed eliminated from the Plan for purposes of: (i) voting to accept or reject the Plan; and (ii) determining the acceptance or rejection of the Plan by such Class pursuant to sections 1129(a)(8) and 1129(a)(10) of the Bankruptcy Code.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Corporate and Organizational Existence.**

The Debtors or Reorganized Debtors, as applicable, in accordance with any Restructuring Steps Plan, are authorized, but not required, to take any actions they determine to be necessary or advisable to effectuate the dissolution of any of the Debtors under applicable law, including, without limitation, the filing of any certificate of dissolution or certificate of cancellation, as applicable, in the office of the Secretary of State of the State of Delaware. The organizational structure of the Reorganized Debtors shall be described in the Plan Supplement.

Subject to the preceding paragraph, except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Reorganized Debtor shall continue to exist, pursuant to its organizational documents in effect prior to the Effective Date, except as otherwise set forth herein or in the Plan Supplement, without any prejudice to any right to terminate such existence (whether by merger or otherwise) in accordance with applicable law after the Effective Date. To the extent such documents are amended on or prior to the Effective Date, such documents are deemed to be amended pursuant to the Plan without any further notice to or action, order or approval of the Bankruptcy Court.

**B.      Corporate Action**

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including: (i) adoption or assumption, as applicable, of the agreements with existing management; (ii) selection of the directors, managers, and officers for the Reorganized Debtors; (iii) implementation of the Restructuring Transactions; (iv) issuance and distribution of the New Common Stock by the Distribution Agent; (v) if applicable, issuance and distribution of the New Warrants and the Branded Warrants by the Distribution Agent; (vi) adoption of the New Corporate Governance Documents; (vii) entry into the First Out Term Loan Credit Agreement and Second Out Take Back Term Loan Credit Agreement, as applicable; (viii) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (ix) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (x) the dissolution of any of the Debtors and (xi) all other acts or actions contemplated or reasonably necessary or appropriate to properly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Corporate Governance Documents, the First Out Term Loan Credit Agreement, the Second Out Take Back Term Loan Credit Agreement, the New Warrant Agreement, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article V.J of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law**.**

**C.      Organizational Documents of the Reorganized Debtors**

On the Effective Date, the New Corporate Governance Documents shall become effective and be deemed to amend and restate the Debtors' existing corporate governance documents without the need for any further notice or approvals. To the extent necessary, the New Corporate Governance Documents will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein. Such New Corporate Governance Documents shall include reasonable and customary minority protections.   After the Effective Date, each Reorganized Debtor may amend and restate its existing corporate governance documents, as permitted by applicable law and pursuant to the terms contained therein.

**D.**     **Managers, Directors and Officers of Reorganized Debtors; Corporate Governance**

On the Effective Date, Reorganized Parent shall enter into and deliver the New Corporate Governance Documents and the New Warrant Agreement, in substantially the forms included in the Plan Supplement, to each Holder of New Common Stock and New Warrants and such Holders shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Parent.  On the Effective Date, each of the Debtors' directors and officers shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Reorganized Debtors, shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

The New Board shall be selected in accordance with the New Corporate Governance Documents and the Restructuring Term Sheet. To the extent not previously disclosed, the Debtors will disclose prior to or at the Confirmation Hearing, the affiliations of each Person proposed to serve on the New Board or as an officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a manager, director or officer, the nature of any compensation for such Person.

**E.**     **New Operating Agreement**

Subject to the Restructuring Transactions permitted by this Plan, on the Effective Date, Reorganized Parent shall enter into the New Operating Agreement, which shall become effective and binding in accordance with its terms and conditions upon the parties thereto, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the New Operating Agreement).

On and as of the Effective Date, each Holder of New Common Stock shall be deemed to be a party to the New Operating Agreement without the need for execution by such Holder. The New Operating Agreement shall be binding on all Entities receiving, and all Holders of, the New Common Stock and New Warrants, if applicable (and their respective successors and assigns), whether such New Common Stock or New Warrants, as applicable is received or to be received on or after the Effective Date and regardless of whether such Entity executes or delivers a signature page to the New Operating Agreement.

The form of New Operating Agreement, which shall be filed with the Plan Supplement, shall be consistent with the Restructuring Support Agreement and the Restructuring Term Sheet, and shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Lenders.

**F.**     **First Out Term Loan Credit Documents**

On the Effective Date, the Reorganized Debtors shall execute and deliver the First Out Term Loan Credit Agreement and the other First Out Term Loan Credit Documents. Confirmation shall be deemed approval of the First Out Term Loan Facility (including transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or Reorganized Debtors in connection therewith). The Reorganized

Debtors shall execute and deliver those documents necessary or appropriate to obtain the First Out Term Loan Facility, including the First Out Term Loan Credit Documents.

On the Effective Date, as applicable, all Liens and security interests granted pursuant to, or in connection with the First Out Term Loan Facility Credit Agreement shall be deemed granted by the Reorganized Debtors pursuant to the First Out Term Loan Credit Agreement, and all Liens and security interests granted pursuant to, or in connection with the First Out Term Loan Credit Agreement (including any Liens and security interests granted on the Reorganized Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the First Out Term Loan Credit Agreement and the other "Loan Documents" (as defined therein or any similar defined term), with the priorities established in respect thereof under applicable non-bankruptcy law, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

The Reorganized Debtors shall also execute, deliver, file, record and issue any other related notes, guarantees, deeds of trust, security documents or instruments (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case, without (i) further notice to or order of the Bankruptcy Court or (ii) further act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

The form of the First Out Term Loan Credit Agreement, which shall be filed with the Plan Supplement, shall be consistent with the Restructuring Support Agreement and the First Out Term Loan Facility Term Sheet, and shall be in form and substance acceptable to the Debtors and the Required Consenting First Lien Lenders.

On and as of the Effective Date, all DIP Lenders and Holders of Allowed First Lien Claims that elect to receive First Out Term Loans in accordance with the First Lien Term Loan Syndication Documents shall be deemed to be parties to, and bound by, the First Out Term Loan Credit Agreement, without the need for execution thereof by any such DIP Lender or Holder of an Allowed First Lien Claim.

The Exit Backstop Parties shall fund any such deficit in Cash (Pro Rata based on the percentages indicated on the annex to the Restructuring Term Sheet) and in exchange each Exit Backstop Party will receive its Pro Rata share (based on the percentages indicated on such annex) of: (i) First Out Converted Term Loans on account of their DIP Facility Claims and (ii) the Backstop Premium.

Subject only to the occurrence of the Effective Date and the provision of the First-Out Exit Term Loans, the terms and conditions of the Backstop Premium are satisfied and earned as of the entry of the Confirmation Order.

By voting to accept this Plan, each DIP Lender and First Lien Lender thereby instructs and directs the Distribution Agent and the First Out Term Loan Agent, to (i) act as Distribution Agent to the extent required by this Plan, (ii) execute and deliver the First Out Term Loan Credit Documents (each to the extent it is a party thereto), as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, to which the First Out Term Loan Agent is a party and to promptly consummate the transactions contemplated thereby, and (iii) take any other actions required or contemplated to be taken by the First Out Term Loan Agent and/or the Distribution Agent (as applicable) under this Plan or any of the Restructuring Documents to which it is a party.

## G.    Second Out Take Back Term Loan Documents

On the Effective Date, the Reorganized Debtors shall execute and deliver the Second Out Take Back Term Loan Credit Agreement and the other Second Out Take Back Term Loan Documents. Confirmation shall be deemed approval of the Second Out Take Back Term Loan Facility (including transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or Reorganized Debtors in connection therewith). The Reorganized Debtors shall execute and deliver those documents necessary or appropriate to obtain the Second Out Take Back Term Loan Facility, including the Second Out Take Back Term Loan Credit Documents.

On and as of the Effective Date, all Holders of Allowed First Lien Claims shall be deemed to be parties to, and bound by, the Second Out Take Back Term Loan Credit Agreement, without the need for execution thereof by any Holder of an Allowed First Lien Claim.

By voting to accept this Plan, each First Lien Lender thereby instructs and directs the Distribution Agent and the Second Out Take Back Term Loan Agent (as applicable), to (i) act as Distribution Agent to the extent required by this Plan, (ii) execute and deliver the Second Out Take Back Term Loan Documents, as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, to which the Second Out Take Back Term Loan Agent is a party and to promptly consummate the transactions contemplated thereby, and (iii) take any other actions required or contemplated to be taken by the Second Out Take Back Term Loan Agent and/or the Distribution Agent (as applicable) under this Plan or any of the Restructuring Documents to which it is a party

On the Effective Date, as applicable, all Liens and security interests granted pursuant to, or in connection with the Second Out Take Back Term Loan Facility Credit Agreement shall be deemed granted by the Reorganized Debtors pursuant to the Second Out Take Back Term Loan Credit Agreement, and all Liens and security interests granted pursuant to, or in connection with the Second Out Take Back Term Loan Credit Agreement (including any Liens and security interests granted on the Reorganized Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the Second Out Take Back Term Loan Credit Agreement and the other "Loan Documents" (as defined therein or any similar defined term), with the priorities established in respect thereof under applicable non-bankruptcy law, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

The Reorganized Debtors shall also execute, deliver, file, record and issue any other related notes, guarantees, deeds of trust, security documents or instruments (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case, without (i) further notice to or order of the Bankruptcy Court or (ii) further act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

The form of the Second Out Take Back Term Loan Credit Agreement, which shall be filed with the Plan Supplement, shall be consistent with the Restructuring Support Agreement and the Second Out Take Back Term Loan Term Sheet, and shall be in form and substance acceptable to the Required Consenting First Lien Lenders.

For the avoidance of doubt, on the Effective Date, all applicable Holders of First Lien Loan Claims shall be deemed party to the Second Out Take Back Term Loan Credit Agreement and the applicable other Second Out Take Back Term Loan Documents, in each case, without the need for execution by any party thereto other than Reorganized Parent.

## H.    New ABL Facility

On the Effective Date, Effective Date, the Reorganized Debtors shall be authorized, subject to the terms and conditions of the Plan and the Restructuring Support Agreement, to enter into the New ABL Facility, as well as any notes, documents or agreements required thereunder, including any documents required in connection with the creation or perfection of the liens on collateral securing the obligations arising under the New ABL Facility.

On the Effective Date, as applicable, all Liens and security interests granted pursuant to, or in connection with the New ABL Facility Agreement shall be deemed granted by the Reorganized Debtors pursuant to the New ABL Facility Agreement, and all Liens and security interests granted pursuant to, or in connection with the New ABL Facility Agreement (including any Liens and security interests granted on the Reorganized Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the New ABL Facility Agreement and the other "Loan Documents" (as defined therein or any similar defined term), with the priorities established in respect thereof under applicable non-bankruptcy law, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

The Reorganized Debtors shall also execute, deliver, file, record and issue any other related notes, guarantees, deeds of trust, security documents or instruments (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case, without (i) further notice to or order of the Bankruptcy Court or (ii) further act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate

to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

The form of the New ABL Facility Agreement, which shall be filed with the Plan Supplement, shall be consistent with the Restructuring Support Agreement and the Restructuring Term Sheet, and shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting First Lien Lenders.

## I. Exemption from Registration Requirements.

All shares of New Common Stock, New Warrants or other Securities, as applicable, issued and distributed pursuant to the Plan, will be issued and distributed without registration under the Securities Act or any similar federal, state, or local law in reliance upon (i) section 1145 of the Bankruptcy Code; (ii) section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder; or (iii) such other exemption as may be available from any applicable registration requirements.

To the extent that the offering, issuance, and distribution of any shares of New Common Stock or New Warrants pursuant to the Plan is in reliance upon section 1145 of the Bankruptcy Code, it is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. Such shares of New Common Stock, New Warrants or other Securities to be issued under the Plan pursuant to section 1145 of the Bankruptcy Code (i) will not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) subject to the terms of the New Corporate Governance Documents and the New Warrant Agreement, will be freely tradable and transferable by any initial recipient thereof that (a) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (b) has not been such an "affiliate" within 90 days of such transfer, and (c) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of the Bankruptcy Code.

All shares of New Common Stock, New Warrants or other Securities issued pursuant to the Plan that are not issued in reliance on section 1145 of the Bankruptcy Code will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, or such other exemption as may be available from any applicable registration requirements. All shares of New Common Stock or New Warrants issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom. The New Common Stock or New Warrants underlying the MIP will be issued pursuant to a registration statement or an available exemption from registration under the Securities Act and other applicable law.

The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date.

Should the Reorganized Debtors and the Required Consenting First Lien Lenders elect, on or after the Effective Date, to reflect all or any portion of the ownership of Reorganized Parent's

New Common Stock or New Warrants through the facilities of the Depository Trust Company ("**DTC**"), the Reorganized Debtors shall not be required to provide any further evidence other than the Plan or Final Order with respect to the treatment of such applicable portion of Reorganized Parent's New Common Stock or the New Warrants, and such Plan or Final Order shall be deemed to be legal and binding obligations of the Reorganized Debtors in all respects.

DTC shall be required to accept and conclusively rely upon the Plan and Final Order in lieu of a legal opinion regarding whether Reorganized Parent's New Common Stock or the New Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether Reorganized Parent's New Common Stock or the New Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**J.**      **Cancellation of Certain Existing Security Interests**

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the Holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors (as applicable) any termination statements, instruments of satisfaction or releases of all security interests with respect to its Allowed Other Secured Claim that may reasonably be required in order to terminate any related financing statements, mortgages, mechanic's liens or lis pendens and take any and all other steps reasonably requested by the Debtors, the Reorganized Debtors, the First Out Term Loan Agent or the Second Out Take Back Term Loan Agent that are necessary to cancel and/or extinguish any Liens or security interests securing such Holder's Other Secured Claim.

**K.**      **Management Incentive Plan**

After the Effective Date, the New Board shall be authorized to adopt and institute the MIP, enact and enter into related policies and agreements, and distribute New Common Stock to participants, in each case, based on the terms and conditions set forth in the Restructuring Support Agreement and the MIP Term Sheet.

**L.**      **Restructuring Transactions**

Following Confirmation, the Debtors and/or the Reorganized Debtors, as applicable, shall take any actions as may be necessary or appropriate to effect a restructuring of the Debtors' business or the overall organization or capital structure subject to and consistent with the terms of the Plan and the Restructuring Support Agreement and subject to the consent rights set forth therein in all respects. The actions taken by the Debtors and/or the Reorganized Debtors, as applicable, to effect the Restructuring Transactions may include: (i) the execution, delivery, adoption and/or amendment of appropriate agreements or other documents of restructuring, conversion, disposition, dissolution, liquidation, merger or transfer containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and any documents contemplated hereunder or thereunder and that satisfy the applicable requirements of applicable state law and

any other terms to which the applicable parties may agree; (ii) the execution, delivery, adoption and/or amendment of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Restructuring Support Agreement and any documents contemplated hereunder or thereunder and having any other terms for which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation or formation, reincorporation, merger, conversion, dissolution or other organizational documents, as applicable, pursuant to applicable state law, including certificates of dissolution with respect to certain Debtors; (iv) the execution, delivery, adoption and/or amendment of all filings, disclosures or other documents necessary to obtain any necessary third-party approvals; and/or (v) all other actions that the Debtors and/or the Reorganized Debtors, as applicable, determine, with the consent of the Required Consenting First Lien Lenders, to be necessary, desirable or appropriate to implement, effectuate and consummate the Plan or the Restructuring Transactions contemplated hereby, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions. All matters provided for pursuant to the Plan that would otherwise require approval of the equity holders, managing members, members, managers, directors, or officers of any Debtor (as of or prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law, the provisions of the New Corporate Governance Documents, and without any requirement of further action by the equity holders, managing members, members, managers, directors or officers of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

The Confirmation Order shall and shall be deemed to, pursuant to sections  105(a), 363, and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**M.    Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors and the officers and members of the New Board and any other board of directors or managers of any of the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, deliver, file or record such agreements, securities, instruments, releases and other documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Restructuring Transactions, including the First Out Term Loan Credit Documents, the Second Out Take Back Term Loan Documents and any New Corporate Governance Documents of the Reorganized Debtors in the name of and on behalf of one or more of the Reorganized Debtors, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

**N.    Vesting of Assets in the Reorganized Debtors**

Except as provided elsewhere in the Plan, or in the Confirmation Order, on or after the Effective Date, all property and assets of the Debtors' Estates (including Causes of Action and Avoidance Actions, but only to the extent such Causes of Action and Avoidance Actions have not been waived or released pursuant to the terms of the Plan, pursuant to an order of the Bankruptcy Court, or otherwise) and any property and assets acquired by the Debtors pursuant to the Plan, will

vest in the Reorganized Debtors, free and clear of all Liens or Claims. Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the New Corporate Governance Documents.

**O.    Release of Liens, Claims and Existing Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims or Existing Equity Interests in or against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens, Claims, or Existing Equity Interests will, if necessary, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors and shall incur no liability to any Entity in connection with its execution and delivery of any such instruments.

On the Effective Date, in exchange for the treatment described herein and as set forth in Article III.C, the First Lien Claims shall be discharged, the Liens on the Collateral (as defined in the Existing First Lien Credit Agreement) shall be released and the Existing First Lien Credit Agreement shall be cancelled and be of no further force or effect. On the Effective Date, in exchange for the treatment described herein and as set forth in Article III.C, the Second Lien Term Loan Claims shall be discharged, the Liens on the Collateral (as defined in the Second Lien Term Credit Agreement) shall be released and the Existing Second Lien Term Credit Agreement in respect thereof shall be cancelled and be of no further force or effect.

**P.    Cancellation of Stock, Certificates, Instruments and Agreements**

On the Effective Date, except as provided below, all stock, units, instruments, certificates, agreements and other documents evidencing the Existing Equity Interests will be cancelled, and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by any Person. On the Effective Date, the First Lien Agent will be released and discharged from any further responsibility under the Existing First Lien Credit Agreement. On the Effective Date, the Second Lien Agent will be released and discharged from any further responsibility under the Existing Second Lien Term Credit Agreement provided, however, that notwithstanding confirmation or the occurrence of the Effective Date, the Existing First Lien Credit Agreement and Existing Second Lien Term Credit Agreement shall continue in effect solely for purposes of (i) allowing Holders of Allowed Claims to receive distributions under the Plan, (ii) allowing and preserving the rights of the Distribution Agent to make or receive distributions pursuant to the Plan and to take other actions pursuant to the terms of the Plan on account of Allowed Claims, (iii) preserving the Loan Agents' exercise of their rights,

claims, causes of action, and interests (including their rights, if any, to compensation and indemnification) as against any money or property distributable to the holders of First Lien Claims and Second Lien Term Loan Claims, including permitting the Loan Agents to maintain, enforce, and exercise any charging liens against such distributions, (iv) preserving all rights, including rights of enforcement, of the Loan Agents against any person other than a Released Party (including the Debtors), including with respect to indemnification or contribution from the holders of the First Lien Claims, and Second Lien Term Loan Claims pursuant and subject to the terms of the Existing First Lien Credit Agreement and the Existing Second Lien Term Credit Agreement as in effect on the Effective Date, (v) permitting the Loan Agents to enforce any obligation (if any) owed to the other Loan Agent, under the Plan, (vi) permitting the Loan Agents to appear in these Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Existing First Lien Credit Agreement or the Existing Second Lien Term Credit Agreement, as applicable, in furtherance of the foregoing, (vii) the Loan Agents, the First Lien Lenders, and the Second Lien Lenders to assert any rights with respect to any contingent obligations under the First Lien Credit Agreement or contingent obligations under the Second Lien Term Credit Agreement, as applicable, and (viii) permitting the Loan Agents to perform any functions that are necessary to effectuate the foregoing; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan. The Loan Agents and each of their respective directors, officers, employees, agents, affiliates, controlling persons, and legal and financial advisors shall, without any further action or approval of the Bankruptcy Court or any holders of Claims, shall each be automatically and fully discharged and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by the Loan Agents and their representatives and professionals of any obligations and duties required under or related to the Plan or Confirmation Order, the Loan Agents shall be relieved of and released from any obligations and duties arising thereunder. The fees, expenses, and costs of the Loan Agents, including fees, expenses, and costs of its professionals incurred after the Effective Date in connection with the Existing First Lien Credit Agreement or the Existing Second Lien Term Credit Agreement, as applicable, and reasonable and documented costs and expenses associated with effectuating distributions pursuant to the Plan, if any, will be paid in accordance with the terms of the Plan.

## Q.    Preservation and Maintenance of Debtors' Causes of Action

### (i)    Maintenance of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in Article XI or elsewhere in the Plan or the Confirmation Order, or in any contract, instrument, release or other agreement entered into in connection with the Plan, on and after the Effective Date, the Reorganized Debtors shall retain any and all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action of the Debtors, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal, including in an adversary proceeding filed in these Chapter 11 Cases. The Reorganized Debtors, as the successors in interest to the Debtors and their Estates, may, in their sole and absolute discretion, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all such Causes of Action, without notice to or approval from the Bankruptcy Court. The

Reorganized Debtors or their respective successor(s) may pursue such retained claims, rights or Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successor(s) who hold such rights.

### (ii)    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against a Holder of a Claim or an Existing Equity Interest or other Entity is (i) expressly waived, relinquished, released, compromised or settled in the Plan (including and for the avoidance of doubt, the releases contained in <u>Article XI</u> of the Plan) or any Final Order (including the Confirmation Order), or (ii) subject to the discharge and injunction provisions in <u>Article XI</u> of the Plan, and the Confirmation Order, in the case of each of clauses (i) and (ii), the Debtors and the Reorganized Debtors, as applicable, expressly reserve such Cause of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the Confirmation of the Plan or the Effective Date of the Plan based on the Plan or the Confirmation Order. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

### R.    Exemption from Certain Transfer Taxes

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtors to the Reorganized Debtors or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, UCC filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the following instruments or other documents without the payment of any such tax or governmental assessment. Such exemption under section 1146(a) of the Bankruptcy Code specifically applies to (i) the creation of any mortgage, deed of trust, Lien or other security interest; (ii) the making or assignment of any lease or sublease; (iii) any Restructuring Transaction; (iv) the issuance, distribution and/or sale of any of the New Common Stock and any other securities of the Debtor or the Reorganized Debtor; or (v) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

### S.    Certain Tax Matters

The Debtors and the Required Consenting First Lien Lenders will work together in good faith and will use reasonable best efforts to structure and implement the Restructuring Transactions

and the transactions related thereto in a tax-efficient and advantageous structure.  In connection with the issuance of the New Common Stock, the Reorganized Parent (or such other entity determined by the Required Consenting First Lien Lenders) shall be an entity that will be treated as a corporation for tax purposes.

The Plan Supplement shall include a restructuring steps plan, in form and substance reasonably acceptable to the Required Consenting First Lien Lenders, that shall outline the steps, considerations, treatment of intercompany claims and interests, and agreed funding, as applicable, for any Company Party, including, for the avoidance of doubt, any foreign non-Debtor Company Party.

## T.    Restructuring Expenses

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of these Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval; *provided*, that the Debtors and Reorganized Debtors (as applicable) shall have the right to review (subject to applicable attorney-client privilege) and, to the extent set forth in any engagement or fee letter between the Debtors and any First Lien Ad Hoc Group Advisor or Second Lien Ad Hoc Group Advisor, object to any such Restructuring Expenses on reasonableness grounds. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, *further*, that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.  In addition, after the Effective Date, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses arising directly out of the implementation of the Plan and Consummation thereof without any requirement for review or approval by the Bankruptcy Court or for any party to file a fee application with the Bankruptcy Court.

## U.    Distributions

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Debtors or Reorganized Debtors to make payments required pursuant to the Plan will be paid from the proceeds of the First Out Term Loan Facility or the Cash balances of the Debtors or the Reorganized Debtors. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors, as applicable, or any designated Affiliates of the Reorganized Debtors on their behalf.

**ARTICLE VI.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

**A.    Debtors Assumption of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by such Debtor; (ii) expired or terminated pursuant to its own terms prior to the Effective Date; or (iii) is the subject of a motion to reject filed on or before the Effective Date. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to one or more Reorganized Debtors. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed, or amended and assumed, and, in either case, potentially assigned, restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption, or amendment and assumption, and, in either case, the potential assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests. Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

**B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

The Reorganized Debtors shall satisfy any monetary defaults under any Executory Contract or Unexpired Lease to be assumed hereunder, to the extent required by section 365(b)(1) of the Bankruptcy Code, upon assumption thereof in the ordinary course of business. If a counterparty to any Executory Contract or Unexpired Lease believes any amounts are due as a result of such Debtor's monetary default thereunder, it shall assert a Cure Claim against the Debtors or Reorganized Debtors, as applicable, in the ordinary course of business, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Cure Claim. Any Cure Claim shall

43

be deemed fully satisfied, released and discharged upon payment by the Reorganized Debtors of the applicable Cure Claim; *provided*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to assert or file such request for payment of such Cure Claim. The Debtors, with the consent of the Required Consenting First Lien Lenders, or the Reorganized Debtors, as applicable, may settle any Cure Claims without any further notice to or action, order or approval of the Bankruptcy Court.

As set forth in the notice of the Confirmation Hearing, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including an objection regarding the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), must have been filed with the Bankruptcy Court by the deadline set by the Bankruptcy Court for objecting to Confirmation of the Plan, or such other deadline as may have been established by order of the Bankruptcy Court. To the extent any such objection is not determined by the Bankruptcy Court at the Confirmation Hearing, such objection may be heard and determined at a subsequent hearing. Any counterparty to an Executory Contract or Unexpired Lease that did not timely object to the proposed assumption of any Executory Contract or Unexpired Lease by the deadline established by the Bankruptcy Court will be deemed to have consented to such assumption.

In the event of a dispute regarding (i) the amount of any Cure Claim, (ii) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (iii) any other matter pertaining to assumption or the payment of Cure Claims required by section 365(b)(1) of the Bankruptcy Code, payment of a Cure Claim, if any, shall occur as soon as reasonably practicable after entry of a Final Order or Final Orders resolving such dispute and approving such assumption. The Debtors (with the reasonable consent of the Required Consenting First Lien Lenders), or Reorganized Debtors, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute or upon a resolution of such dispute that is unfavorable to the Debtors or Reorganized Debtors.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and full payment of any applicable Cure Claims pursuant to the Plan, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or non-monetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the date that the Reorganized Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## C.    Assumption of Insurance Policies

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Reorganized Debtors shall be deemed to have assumed all insurance policies

and any agreements, documents and instruments related thereto, including all D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair or otherwise modify any indemnity obligations presumed or otherwise referenced in the foregoing insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect or purchased as of the Petition Date, and all members, managers, directors and officers of the Reorganized Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by such D&O Liability Insurance Policy shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such members, managers, directors and/or officers remain in such positions after the Effective Date.

## D. Indemnification

The indemnification provisions in any Indemnification Agreement with respect to or based upon any act or omission taken or omitted by an indemnified party in such indemnified party's capacity under such Indemnification Agreement will be Reinstated (or assumed, as the case may be) and will survive effectiveness of the Plan. All such obligations are treated as and deemed to be Executory Contracts to be assumed by the Debtors pursuant to <u>Article VI.A</u> of the Plan. Notwithstanding the foregoing, nothing shall impair the Reorganized Debtors from prospectively modifying any such indemnification provisions (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts or otherwise) after the Effective Date, for indemnification claims and/or rights arising after the Effective Date.

## E. Severance Agreements and Compensation and Benefit Programs; Employment Agreements

Except as otherwise provided in the Plan, the Plan Supplement or any order of the Bankruptcy Court, all severance policies, all severance arrangements and all compensation and benefit plans, policies, and programs of the Debtors generally applicable to their employees and retirees, including all savings plans, retirement plans, healthcare plans, disability plans, severance agreements and arrangements, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date will be assumed by the Reorganized Debtors pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

## F.        Workers' Compensation Benefits

Except as otherwise provided in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors will continue to honor their obligations under: (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance; all such contracts and agreements are treated as Executory Contracts under the Plan and on the Effective Date will be assumed by the Reorganized Debtors pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

## G.        Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors, Reorganized Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or Reorganized Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or Reorganized Debtors, as applicable, shall have forty-five (45) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease effective as of the Confirmation Date or such other date the Reorganized Debtors deem appropriate.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.        Distribution Record Date

Distributions hereunder to the Holders of Allowed Claims shall be made to the Holders of such Claims as of the Distribution Record Date. Any transfers of Claims after the Distribution Record Date shall not be recognized for purposes of the Plan unless otherwise provided herein.

## B.        Dates of Distributions

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions

provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

## C.    Distribution Agent

Except as otherwise provided in the Plan, all distributions under the Plan, including the distribution of the New Common Stock and New Warrants, shall be made by the Distribution Agent or by such other Entity designated by the Reorganized Debtors as a Distribution Agent on the Effective Date. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of the duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) empower professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as are necessary and proper to implement the provisions hereof. If the Distribution Agent is an entity other than the Reorganized Debtors, such entity shall be paid its reasonable fees and expenses, including the reasonable fees and expenses of its attorneys or other professionals.

## D.    Cash Distributions

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors.

## E.    Rounding of Payments

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar.

No fractional membership units or shares shall be issued or distributed under the Plan. Each Person entitled to receive New Common Stock shall receive the total number of whole units or shares of New Common Stock to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for the distribution of a fraction of a unit or share of New Common Stock, the actual distribution of units or shares of such Existing Equity Interests shall be rounded down to the nearest whole number.

To the extent Cash, shares, stock or units that are to be distributed under the Plan remain undistributed as a result of the rounding down of such fraction to the nearest whole dollar or whole number of notes, shares, stock or units, such Cash, shares, stock or units shall be treated as an Unclaimed Distribution under the Plan.

## F.    Allocation Between Principal and Interest

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, and then, to the extent the consideration exceeds such amount,

to the remainder of such Claim comprising interest accrued through the Effective Date, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## G.    General Distribution Procedures

The Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

All distributions to holders on account of Allowed First Lien Claims shall be deemed completed when made to or at the direction of the First Lien Agent, which shall be deemed to be the holder of such Claims for purposes of distributions to be made under this Plan. The First Lien Agent shall hold or direct such distributions for the benefit of the holders of the foregoing Allowed First Lien Claims.  The First Lien Agent shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct. If the First Lien Agent is unable to make, or consent to the Reorganized Debtors making, such distributions, the Reorganized Debtors or an authorized Disbursing Agent, with the First Lien Agent's cooperation, shall make such distribution. The First Lien Agent shall have no duties, obligations, or responsibilities with respect to any form of distribution to holders of the foregoing Allowed Claims that is not DTC-eligible, and the Reorganized Debtors shall make such distributions. For the avoidance of doubt, all distributions referenced in this paragraph shall be subject to any charging liens exercised by the First Lien Agent.

## H.    Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (i) at the address set forth on any Proofs of Claim filed by such Holders (to the extent such Proofs of Claim are filed in these Chapter 11 Cases), (ii) at the address set forth in any written notices of address change delivered to the Debtors, (iii) at the address in the Debtors' books and records or (iv) in accordance with the Existing First Lien Credit Agreement and the Existing Second Lien Term Credit Agreement.

## I.    Unclaimed Distributions

If the distribution to the Holder of any Allowed Claim becomes an Unclaimed Distribution, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder.

Such Unclaimed Distribution and such Holder's rights to the distribution or any subsequent distribution shall be deemed forfeit under the Plan. Notwithstanding any federal or state escheat, abandoned or unclaimed property laws to the contrary, such Unclaimed Distribution and any subsequent distributions on account of such Holder's Allowed Claim shall be deemed disallowed, discharged and forever barred as unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to and vest in the Reorganized Debtors free of any restrictions thereon. Holders that fail to claim such Unclaimed Distribution shall have no claim whatsoever on account of such Unclaimed Distribution, or any subsequent distributions, against the Debtors or the Reorganized

Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

## J.    Withholding Taxes

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtors shall, to the extent applicable, comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities and shall be entitled to deduct any federal, state or local withholding taxes from any distributions made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Reorganized Debtors shall comply with all reporting obligations imposed on them by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

## K.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in an order of the Court, the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Existing Equity Interests, and no Holder of a Claim or Existing Equity Interest shall be entitled to interest, dividends or other accruals accruing on or after the Petition Date on any such Claim or Existing Equity Interest.

## L.    Setoffs

Except as otherwise expressly provided for herein, the Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and Causes of Action that the Reorganized Debtors possesses against such Holder; *provided, further,* that no such setoff shall be permitted against any Allowed First Lien Claim or any distributions to be made pursuant to the Plan on account of any such Allowed Claims.

**M.      Surrender of Cancelled Instruments or Securities**

Except as otherwise provided herein, as a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of an Allowed Claim in the Voting Classes based upon an instrument or other security shall be deemed to have surrendered such instrument, security or other documentation underlying such Claim and all such surrendered instruments, securities and other documentation shall be deemed cancelled pursuant to <u>Article V.N</u> of the Plan.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**A.      Disputed Claims Process**

Holders of Claims are not required to file a Proof of Claim with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, all Allowed Claims shall be paid pursuant to the Plan in the ordinary course of business of the Reorganized Debtors and shall survive the Effective Date as if these Chapter 11 Cases had not been commenced. Other than Claims arising from the rejection of an Executory Contract or Unexpired Lease, if the Debtors or the Reorganized Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if these Chapter 11 Cases had not been commenced and shall survive the Effective Date as if these Chapter 11 Cases had not been commenced. Solely to the extent that an Entity is required to file a Proof of Claim and the Debtors or the Reorganized Debtors, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this <u>Article VIII</u> of the Plan. For the avoidance of doubt, there is no requirement to file a Proof of Claim (or move the Court for allowance) to be an Allowed Claim under the Plan. All Proofs of Claim required to be filed by the Plan that are filed after the date that they are required to be filed pursuant to the Plan shall be disallowed and forever barred, estopped and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order or approval of the Bankruptcy Court, unless leave to file is obtained via order of the Bankruptcy Court or the written authorization of the Reorganized Debtors.

**B.      Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (i) file, withdraw, or litigate to judgment, objections to Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (iii) administer and adjust the Claims Register to reflect any such settlements, compromises or withdrawals without any further notice to or action, order or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor or its assignor had immediately prior

50

to the Effective Date with respect to any Disputed Claim, including the Causes of Action retained pursuant to <u>Article V.O</u> of the Plan.

## C.    Estimation of Claims

Before or after the Effective Date, the Debtors, with the reasonable consent of the Required Consenting First Lien Lenders, or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim or contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of each other. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## D.    Amendments to Claims; Adjustment to Claims on Claims Register

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further action, order or approval of the Bankruptcy Court. Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order or approval of the Bankruptcy Court.

## E.    No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**F.**     **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

**G.**     **No Interest**

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**     **Conditions to Effective Date**

Effectiveness of the Plan is subject to the satisfaction of each of the following conditions precedent:

(i)     the Restructuring Support Agreement shall have been executed and shall not have been terminated and remains in full force and effect;

(ii)     the Definitive Documents (as defined in the Restructuring Support Agreement) shall, subject to any consent rights contained in the Restructuring Support Agreement, contain terms and conditions consistent in all material respects with the Restructuring Term Sheet, the Restructuring Support Agreement and the exhibits attached thereto;

(iii)     the Bankruptcy Court shall have entered the Prepack Scheduling Order and such Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

(iv)     the DIP Facility shall remain in full force and effect and shall not have been terminated, and no event of default shall have occurred and be continuing thereunder;

(v)     the Plan shall have been confirmed by the Bankruptcy Court and all related Plan exhibits and other documents shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith;

(vi)     the Confirmation Order shall have been entered and shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered;

(vii)     there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other governmental unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan;

(viii)    the Restructuring Transactions shall have been consummated, and all transactions contemplated herein, in a manner consistent in all respects with the Restructuring Support Agreement, the Restructuring Term Sheet, the exhibits attached thereto, and the Plan;

(ix)     the Debtors shall have paid or reimbursed all Restructuring Expenses;

(x)      the First Out Term Loan Facility, the Second Out Take Back Term Loan Facility and any related documents shall have been executed, delivered, and be in full force and effect with all conditions precedent thereto having been satisfied or waived, on or prior to the Effective Date, other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred;

(xi)     none of these Chapter 11 Cases shall have been converted to a case under chapter 7 of the Bankruptcy Code;

(xii)    no Bankruptcy Court order appointing a trustee or examiner with expanded powers shall have been entered and remain in effect under any chapter of the Bankruptcy Code with respect to the Debtors;

(xiii)   the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with the terms of the Plan and the Restructuring Support Agreement;

(xiv)   all conditions to the issuance of the MIP, New Common Stock and New Warrants contemplated to be issued pursuant to the Plan shall have occurred;

(xv)    the Debtors shall have paid or reimbursed all fees and expenses of the DIP Lenders and DIP Agent, including the DIP Professional Fees; and

(xvi)   any and all requisite governmental, regulatory, environmental, and third-party approvals and consents shall have been obtained.

**B.     Waiver of Conditions**

The conditions to the Effective Date of the Plan set forth in this Article IX may be waived only if waived in writing by the Debtors and the Required Consenting First Lien Lenders (and, with respect to section A.(ix), each affected First Lien Ad Hoc Group Advisor); *provided*, that the condition requiring that the Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated, or reconsidered may not be waived.

C.      **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

D.      **Effect of Non-Occurrence of Conditions to Consummation**

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (ii) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.

## RETENTION OF JURISDICTION

A.      **Retention of Jurisdiction**

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over these Chapter 11 Cases and all Entities with respect to all matters related to these Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including jurisdiction to:

(i)      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Existing Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim or Existing Equity Interest; *provided*, that, for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors or the Reorganized Debtors, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

(ii)      grant or deny any applications for allowance of Professional Fee Claims;

(iii)      resolve any matters related to the assumption or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party and, if necessary, liquidate any Claims arising therefrom;

(iv)      resolve any issues related to any matters adjudicated in these Chapter 11 Cases;

(v)      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(vi)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending in these Chapter 11 Cases as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date; *provided*, that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

(vii)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, and all orders previously entered into by the Bankruptcy Court, or any Entity's obligations incurred in connection with the Plan;

(viii)    issue and enforce injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(ix)     enforce the terms and condition of the Plan and the Confirmation Order;

(x)     resolve any cases, controversies, suits or disputes with respect to the releases, the exculpations, the indemnification provisions and other provisions contained in Article XI hereof and enter such orders or take such others actions as may be necessary or appropriate to implement, enforce or determine the scope of all such releases, exculpations, injunctions and other provisions;

(xi)     enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(xii)    resolve any cases, controversies, suits or disputes that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted or entered into in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(xiii)    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order previously entered by the Bankruptcy Court, including the Confirmation Order;

(xiv)    hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xv)     hear any other matter not inconsistent with the Bankruptcy Code; and

(xvi)    enter an order closing each of these Chapter 11 Cases.

As of the Effective Date, notwithstanding anything in this Article X to the contrary, the First Out Term Loan Credit Agreement, the Second Out Take Back Term Loan Credit Agreement, and the New Corporate Governance Documents shall be governed by the respective jurisdictional provisions therein.

B.      **Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in Article X.A of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XI.

## EFFECTS OF CONFIRMATION

A.      **Binding Effect**

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EXISTING EQUITY INTERESTS IN THE DEBTORS, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR EXISTING EQUITY INTEREST IN THESE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.**

B.      **Discharge of the Debtors**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, and effective as of the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Existing Equity Interests herein will be in exchange for and in complete satisfaction, settlement, discharge and release of all Claims and Existing Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (ii) the Plan will bind all Holders of Claims and Existing Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and Existing Equity Interests will be satisfied, discharged and released in full, and the Debtors' liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (iv) except as otherwise expressly provided for in the Plan, all Entities will be precluded from asserting against, derivatively on behalf of, or through, the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Existing Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

C.      **Exculpation and Limitation of Liability**

Except as otherwise specifically provided in the Plan, to the fullest extent authorized by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, amendment, or filing or termination of the Restructuring Support Agreement and related transactions, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the First Out Term Loan Facilities, the First Out Term Loan Facility, the First Out Term Loan Facility Documents, the Second Out Take Back Term Loan Facility, the Second Out Take Back Term Loan Facility Documents, the New ABL Facility, the DIP Facility, the DIP Loan Documents, or any Restructuring Transaction, any contract, instrument, release or other agreement or document relating to the foregoing created or entered into before or during these Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, these Chapter 11 Cases (including the filing thereof), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that constitutes actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above shall not operate to waive or release the rights of any Entity to enforce this Plan, the Restructuring Support Agreement, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

D.      **Releases by the Debtors**

**Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party and its respective assets and property are, and are deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by the Debtors, Reorganized Debtors, and the Debtors' Estates, in each case on behalf of themselves and their Related Parties, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, Reorganized Debtors, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of**

57

any claim or Cause of Action against, or interest in, a Debtor or other Entity (or that any holder of any claim, interest, or Cause of Action could have asserted on behalf of the Debtors), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in  or out of court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, and/or an Affiliate of a Debtor, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, execution, amendment, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the First Out Term Loan Facilities, the First Out Term Loan Facility Documents, the Second Out Take Back Term Loan Facility, the Second Out Take Back Term Loan Facility Documents, the New ABL Facility, the DIP Facility, the DIP Loan Documents, New Corporate Governance Documents, the New Common Stock Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into before or during these Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, these Chapter 11 Cases (including the filing thereof), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, the business or contractual arrangements between any Debtor and any Released Party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under the Plan, the Restructuring Support Agreement, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan by the Debtors, Reorganized Debtors, and the Debtors' Estates, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in the Plan is:  (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action; (ii) in the best interest of the Debtors, Reorganized Debtors, and the Debtors' Estates and all holders of Interests and Causes of Action; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) subject to the terms and provisions herein, a bar to the Debtors, Reorganized Debtors, and the Debtors' Estates asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their assets and property.

E.    **Consensual Releases by Holders of Claims and Existing Equity Interests**

Pursuant to section 1123(b) and any other applicable provisions of the Bankruptcy Code, and except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, each Released Party

and its respective assets and property are, and are deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party, in each case on behalf of themselves and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in or out of court restructuring efforts, intercompany transactions between or among a Debtor, another Debtor and/or an Affiliate of a Debtor, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, execution, amendment, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the First Out Term Loan Facilities, the First Out Term Loan Facility, the First Out Term Loan Facility Documents, the Second Out Take Back Term Loan Facility, the Second Out Take Back Term Loan Facility Documents, the New ABL Facility, the DIP Facility, the DIP Loan Documents, the New Corporate Governance Documents, the New Common Stock Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document relating to any of the foregoing, created or entered into before or during these Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, these Chapter 11 Cases (including the filing thereof), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan (including the New Common Stock), or the distribution of property under the Plan or any other related agreement, the business or contractual arrangements between any Debtor and any Released Party, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post Effective Date obligations of any party or Entity under the Plan, the Restructuring Support Agreement, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Claim or obligation arising under the Plan, (ii) any Person from any claim or Causes of Action related to an act or omission that constitutes actual fraud, willful misconduct, or gross negligence by such Person, or (iii) any lender under either the Existing First Lien Credit Agreement or the Existing Second Lien Credit Agreement of any indemnification or contribution claims of either the First Lien Agent or the Second Lien Agent (or the predecessor to the Second Lien Agent) under such agreements.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases in this Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, will constitute the Bankruptcy Court's finding that such releases are: (i) in exchange for good and valuable consideration provided by, and the contributions of, the Debtors and the other Released Parties, representing good faith settlement and compromise of the claims released in the Plan; (ii) in the best interests of the

Debtors and all holders of Claims and Interests; (iii) fair, equitable, and reasonable; (iv) approved after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim or cause of action released by such Releasing Party against any of the Debtors or Reorganized Debtors or any other Released Parties or their respective property.

F.      Injunction

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE XI.E OR ARTICLE XI.F OF THE PLAN, DISCHARGED PURSUANT TO ARTICLE XI.C OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE XI.D OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (ii) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (iii) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (iv) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (v) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE INJUNCTION DOES NOT ENJOIN ANY PARTY UNDER THE PLAN OR UNDER ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN FROM BRINGING AN ACTION TO ENFORCE THE TERMS OF THE PLAN OR SUCH DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

## G.      Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors has been associated, solely because such Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of these Chapter 11 Cases (or during these Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in these Chapter 11 Cases.

# ARTICLE XII.

# MISCELLANEOUS PROVISIONS

## A.      Modification of Plan

Subject in all respects to the limitations in the Restructuring Support Agreement (including the consent rights set forth therein) and this Plan: (i) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, supplement, amend and restate, or otherwise modify the Plan prior to the entry of the Confirmation Order; (ii) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend, supplement, amend and restate, or otherwise modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; and (iii) a Holder of a Claim or Existing Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as amended, supplemented, amended and restated, or otherwise modified, if the proposed amendment, supplement, amendment and restatement, or other modification does not materially and adversely change the treatment of the Claim or Existing Equity Interest of such Holder, or release any claims or liabilities reserved by such Holder under the Plan. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019. Prior to the Effective Date, the Debtors may make appropriate technical adjustments to the Plan without further order or approval of the Bankruptcy Court; *provided*, that such technical adjustments or modifications shall be reasonably satisfactory to the Required Consenting First Lien Lenders. Notwithstanding anything to the contrary contained herein, the Debtors or the Reorganized Debtors, as applicable, shall not amend or modify the Plan other than in accordance with the Restructuring Support Agreement.

## B.      Revocation of Plan

The Debtors, with the prior written consent of the Required Consenting First Lien Lenders, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plans, but without prejudice to the respective parties' rights under the Restructuring Support Agreement. If the Debtors revoke or withdraw the Plan, or if Confirmation

or consummation of the Plan does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Existing Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## C.    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted and the Debtors, with the consent of the Required Consenting First Lien Lenders, may amend, supplement, amend and restate, or otherwise modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. Notwithstanding any such holding of the Bankruptcy Court, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## D.    Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, designee, successor or assign of that Person or Entity.

## E.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases, either by virtue of sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, shall remain in full force and effect until the Effective Date has occurred.

## F.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date shall have occurred. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtors with respect to the Holders of Claims or Existing Equity Interests or other Entity; or (ii) any Holder of a Claim or Existing Equity Interest or other Entity, in each case, prior to the Effective Date.

G.    **Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtors or any of the Consenting Stakeholders under the Plan shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) facsimile transmission or (e) email transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or email transmission, upon confirmation of transmission, addressed as follows:

**If to the Debtors:**

Dynata, LLC
4 Research Drive, Suite 300
Shelton, CT 06484
Attn:        Mike Petrullo
             Steve Macri
**with a copy to (which shall not constitute notice):**

Counsel to the Debtors

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Attn:   Jeffrey D. Pawlitz, Esq. (jpawlitz@willkie.com)
        Andrew S. Mordkoff, Esq. (amordkoff@willkie.com)
        Erin C. Ryan, Esq. (eryan@willkie.com)
Fax:    (212) 728-8111

– and –

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attn:   Edmon L. Morton, Esq. (emorton@ycst.com)
        Matthew B. Lunn, Esq. (mlunn@ycst.com)
Fax:    (302) 571-1253

**If to a Consenting First Lien Lender:**

Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Attn:   Scott J. Greenberg (SGreenberg@gibsondunn.com)
        AnnElyse Scarlett Gains (agains@gibsondunn.com)
        Jonathan M. Dunworth (jdunworth@gibsondunn.com)

63

**H.      Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

**I.      Exhibits**

All exhibits and schedules to the Plan, including the Exhibits, are incorporated and are a part of the Plan as if set forth in full herein.

**J.      No Strict Construction**

The Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Consenting Stakeholders and their respective professionals. Each of the foregoing was represented by counsel of its choice who either (i) participated in the formulation and documentation of, or (ii) was afforded the opportunity to review and provide comments on, the Plan, the Plan Supplement, the Disclosure Statement, and the agreements and documents contemplated therein or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "*contra proferentem*" or other rule of strict construction shall not apply to the construction or interpretation of any provision of the Plan, the Plan Supplement, the Disclosure Statement, and the documents contemplated thereunder and related thereto.

**K.      Conflicts**

In the event of a conflict between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of a conflict between the Confirmation Order and the Plan, the Confirmation Order shall control.

**L.      Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the Holders of Claims and Existing Equity Interests, the Exculpated Parties, the Released Parties, and each of their respective successors and assigns.

**M.      Entire Agreement**

On the Effective Date, this Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

[Remainder of page intentionally left blank]

Dated: May 21, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

By: _Edmon L. Morton_
Edmon L. Morton (Del. No. 3856)
Matthew B. Lunn (Del. No. 4119)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email: emorton@ycst.com
        mlunn@ycst.com
- and -

**WILLKIE FARR & GALLAGHER LLP**

Jeffrey D. Pawlitz (*pro hac vice* pending)
Andrew S. Mordkoff (*pro hac vice* pending)
Erin C. Ryan (*pro hac vice* pending)
Amanda X. Fang (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 728-8000
Facsimile:    (212) 728-8111
Email:    jpawlitz@willkie.com
        amordkoff@willkie.com
        eryan@willkie.com
        afang@willkie.com

*Proposed Counsel to the Debtors and Debtors in Possession*